## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE:               §

JOHN ANDREW GOODMAN   §      CASE NO. 24-10806

                      §

DEBTOR             §      CHAPTER 7

## DEBTOR, JOHN ANDREW GOODMAN'S REPLY IN OPPOSITION TO MOTION OF FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC. FOR RELIEF FROM STAY AND TO LIQUIDATE ITS CLAIM (ECF #29)

## TO THE HONORABLE SHAD ROBINSON, U.S. BANKRUPTCY JUDGE:

JOHN ANDREW GOODMAN, Debtor herein, respectfully represents:

1.    FedEx Supply Chain Logistics & Electronics, Inc (hereinafter referred to as "FedEx") has filed a Motion for Relief from Stay and to Liquidate its Claim (ECF #29). The motion is not well taken and should be denied.

2.    Since FedEx has an allowed claim in this case (as admitted in its motion), there is no point in liquidating the allowed claim in another forum.

3.    To the extent that FedEx asserts claims which it may contend involve objections to the Debtor's discharge under 11 U.S.C. §727 or dischargeability under 11 U.S.C. §523, the automatic stay should not be lifted to address those or related claims upon which the Bankruptcy Court has sole jurisdiction.

4.    The Debtor would be extremely prejudiced and possibly subject to collateral estoppel were fact issues regarding such objections be addressed by the District Court.

5.    Further, the FedEx U. S. District Court case may not be resolved for two to three years and has numerous other defendants.  This lengthy delay in the proposed litigation by FedEx and issues against third party non-debtors would prejudice both the Debtor and the Debtor's estate as it would delay the administration of the estate and its timely closing.  It would also involve considerable costs of defense which would be burdensome to the Debtor and the Debtor's estate.

6.     The Debtor has filed a motion to dismiss the claims of FedEx in District Court, to which FedEx has filed a reply.  True and correct copies of the same are attached hereto and are incorporated by reference herein.

7.     To the extent that the Court may decide to modify the automatic stay it should do so only to allow the Debtor's motion to dismiss to be heard in response to FedEx's complaint, and as may be amended.

8.     The Debtor admits the allegations contained within Paragraph 1 of the FedEx Motion for Relief from Stay, except for the last sentence which the Debtor denies.

9.     The Debtor admits the allegations contained within Paragraph 2 of the FedEx Motion for Relief from Stay.

10.     The Debtor admits the allegations contained within Paragraph 3 of the FedEx Motion for Relief from Stay.

11.     The Debtor denies the allegations contained within Paragraph 4 of the FedEx Motion for Relief from Stay.

12.     The Debtor denies the allegations contained within Paragraph 5 of the FedEx Motion for Relief from Stay.

13.     The Debtor admits the allegations contained within Paragraph 6 of the FedEx Motion for Relief from Stay.

14.     The Debtor admits the allegations contained within Paragraph 7 of the FedEx Motion for Relief from Stay.

15.     The Debtor admits the allegations contained within Paragraph 8 of the FedEx Motion for Relief from Stay.

16.     The Debtor admits the allegations contained within Paragraph 9 of the FedEx Motion for Relief from Stay.

17.     The Debtor admits the allegations contained within Paragraph 10 of the FedEx Motion for Relief from Stay.

18.    The Debtor admits the allegations contained within Paragraph 11 of the FedEx Motion for Relief from Stay.

19.    The Debtor admits the allegations contained within Paragraph 12 of the FedEx Motion for Relief from Stay.

20.    The Debtor admits the allegations contained within Paragraph 13 of the FedEx Motion for Relief from Stay.

21.    The Debtor admits the allegations contained within Paragraph 14 of the FedEx Motion for Relief from Stay.

22.    The Debtor admits the allegations contained within Paragraph 15 of the FedEx Motion for Relief from Stay.

23.    The Debtor admits the allegations contained within Paragraph 16 of the FedEx Motion for Relief from Stay.

24.    The Debtor denies the allegations contained within Paragraph 17 of the FedEx Motion for Relief from Stay.

25.    The Debtor denies the allegations contained within Paragraph 18 of the FedEx Motion for Relief from Stay.

26.    The Debtor denies the allegations contained within Paragraph 19 of the FedEx Motion for Relief from Stay.

27.    The Debtor denies the allegations contained within Paragraph 20 of the FedEx Motion for Relief from Stay.

28.    The Debtor denies the allegations contained within Paragraph 21 of the FedEx Motion for Relief from Stay.

29.    The Debtor denies the allegations contained within Paragraph 22 of the FedEx Motion for Relief from Stay.

30.    The Debtor admits the allegations contained within Paragraph 23 is a correct statement of the law.

31.     The Debtor admits the allegations contained within Paragraph 24 is a correct statement of law but is not applicable in this case..

32.     The Debtor admits the allegations contained within Paragraph 25 is a correct statement of law but is not applicable in this case.

33.     The Debtor denies the allegations contained within Paragraph 26 of the FedEx Motion for Relief from Stay.

34.     The Debtor denies the allegations contained within Paragraph 27 of the FedEx Motion for Relief from Stay.

35.     The Debtor admits the allegations contained within Paragraph 28 of the FedEx Motion for Relief from Stay.

36.     The Debtor denies the allegations contained within Paragraph 29 of the FedEx Motion for Relief from Stay.

37.     The Debtor denies the allegations contained within Paragraph 30 of the FedEx Motion for Relief from Stay.

38.     The Debtor denies the allegations contained within Paragraph 31 of the FedEx Motion for Relief from Stay.

39.     The Debtor denies the allegations contained within Paragraph 32 of the FedEx Motion for Relief from Stay.

40.     The Debtor denies the allegations contained within Paragraph 33 of the FedEx Motion for Relief from Stay.

41.     The Debtor denies the allegations contained within Paragraph 34 of the FedEx Motion for Relief from Stay.

42.     The Debtor admits the allegations contained within Paragraph 35 of the FedEx Motion for Relief from Stay.

43.     The Debtor denies the allegations contained within Paragraph 36 of the FedEx Motion for Relief from Stay.

44.    The Debtor denies the allegations contained within the conclusion of the FedEx Motion for Relief from Stay.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that the relief sought by FedEx, be in all things denied and for such other and further relief to which Debtor may be entitled.

DATED: 12 August, 2024.

Respectfully submitted,

LAW OFFICES OF MARTIN  SEIDLER
11107 Wurzbach Road, Suite 504
San Antonio, Texas 78230
Tel:  (210) 694-0300
Fax:  (210) 690-9886
Email: marty@seidlerlaw.com

By:_____ /s/  *Martin Seidler*_____
        MARTIN SEIDLER, #18000800
        ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served on all parties authorized to receive notice through the ECF notice system and/or on the attached matrix by email or first class mail for this case on this 12th  day of August, 2024.

_____ /s/  *Martin Seidler*_____
Martin Seidler

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:23-CV-02397-S |
| JAMES E. GOODMAN JR., et al., | § § § | |
| *Defendants*. | § | |

**DEFENDANTS JODY GOODMAN, JONATHAN GOODMAN, AND**
**JOHN GOODMAN'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

A.  Preliminary Ground for Dismissal of Whole Case as to All Defendants—No Standing... 1

B.  FedEx Has Not Stated Any RICO Claim Against Movants or Any Defendants............3

    1.  No Enterprise..................................................................................3

    2.  No Pattern of Racketeering Activity....................................................4

    3.  No RICO Conspiracy Liability...........................................................6

    4.  No Predicate Acts...........................................................................8

    5.  No Injury to FedEx Business or Property..............................................9

    6.  Conclusion...................................................................................9

C.  As All Other Claims Are Based on State Law and There is No Diversity Jurisdiction, Dismissal of the RICO Claims Calls for Dismissal of All Other Claims as Well.................................................................................9

D.  Additionally, All State Law Claims Should Be Dismissed on the Merits...................10

    1.  The Economic Loss Rule Bars All State Law Tort Claims..........................10

    2.  Theft Liability Act........................................................................11

    3.  Conversion.................................................................................11

    4.  Unjust Enrichment........................................................................13

    5.  Common Law Fraud......................................................................14

    6.  Civil Conspiracy..........................................................................15

Certificate of Service.................................................................................19

## TABLE OF AUTHORITIES

### Cases

*Ambulatory Servs. of P.R., LLC v. Sankar Nephrology Grp., LLC*, No. 4:18-CV-916-A,
  2019 WL 4192738, 2019 U.S. Dist. LEXIS 150273
  (N.D. Tex. Sept. 3, 2019) (McBryde, J.).................................................... 14

*Armendariz v. Chowaiki*, No. EP-14-CV-451, 2016 WL 8856919,
  2016 U.S. Dist. LEXIS 191605 (W.D. Tex. Mar. 31, 2016)...................................9

*Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702 (Tex. App.—Houston [1st Dist.]
  2014, no pet.)............................................................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................1, 16

*Ausley v. Cross County Water Supply Corp.*, No. A-09-CA-660-SS, 2010 WL 5647119,
  2010 U.S. Dist. LEXIS 140947 (W.D. Tex. Apr. 16, 2010)...................................3

*Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965 (N.D. Tex. 2014)....................8, 14, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................1, 16

*Benfield v. Magee*, 945 F.3d 333 (5th Cir. 2019)......................................... 1

*Boroja v. Roux*, No. 1-22-CV-01299-RP, 2023 WL 4054689, 2023 U.S. Dist. LEXIS 104842
  (W.D. Tex. June 15, 2023), *adopted*, 2023 WL 4356691,
  2023 U.S. Dist. LEXIS 114740 (July 5, 2023)..............................................5

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595 (5th Cir. 2009)...............10

*CADG Erwin Farms, LLC v. Ipour*, No. No. 3:22-cv-02896-M, 2024 WL 1394501,
  2024 U.S. Dist. LEXIS 59259 (N.D. Tex. March 31, 2024) (Lynn, J.)......................... 3

*Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953 (5th Cir. 1994)................... 7

*Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219 (5th Cir. 2010)........................................ 6

*Crouch v. Trinque*, 262 S.W.3d 417 (Tex. App.—Eastland 2008, no pet.)...................... 7, 17

*D&T Partners, LLC v. Baymark Partners Mgmt., LLC*, 98 F.4th 198 (5th Cir. 2024).........3, 5-6

*Elswick Co., LLC v. Comm2013 CCRE12 Crossing Mall Rd. LLC (In re Tara Retail Grp., LLC)*,
  595 B.R. 215 (Bankr. N.D. W. Va. 2018).....................................................2

*Encinas v. Jackson*, 553 S.W.3d 723 (Tex. App.—El Paso 2018, no pet.)........................... 12

*Energium Health v. Gabali*, No. 3:21-CV-2951-S, 2023 WL 6392631,
    2023 U.S. Dist. LEXIS 175693 (N.D. Tex.  Sept. 29, 2023) (Scholer, J.).............. 14-15

*Enochs v. Lampasas Cty.*, 641 F.3d 155 (5th Cir. 2011)................................................. 10

*Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, 2023 U.S. App. LEXIS 13890
    (5th Cir. June 5, 2023) (unpublished)........................................................... 3-4

*Homoki v. Conversion Servs., Inc.*, 717 F.3d 388 (5th Cir. 2013).................................... 16

*In re Burzynski*, 989 F.2d 733 (5th Cir. 1993)............................................................. 8

*In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468 (E.D. La. 2001)
    *aff'd*, 313 F.3d 257 (5th Cir. 2002)................................................................. 3

*In re MasterCard Int'l, Inc. Internet Gambling Litig.*, 313 F.3d 257 (5th Cir. 2002)............... 4

*In re Seven Seas Petroleum*, 522 F.3d 575 (5th Cir. 2008).............................................. 2

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018).......... 14

*Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 U.S. Dist. LEXIS 178201,
    2017 WL 4863076, (N.D. Tex. Oct. 17, 2017), *rec. adopted*,
    2017 U.S. Dist. LEXIS 177890, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017)....... 15-16

*Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86 (Tex. App.—El Paso
    1998, no pet)..................................................................................... 7, 17

*Manax v. McNamara*, 842 F.2d 808 (5th Cir. 1988)...................................................... 3

*May v. City of Arlington*, 398 F. Supp. 3d 68, 89 (N.D. Tex. 2019) (Lindsay, J.)................... 16

*Moore v. Carrington Mortg. Servs., LLC*, No. 3:17-cv-3132-G-BN, 2018 WL 3853711,
    2018 U.S. Dist. LEXIS 136288 (N.D. Tex. July 17, 2018) (Horan, M.J.), *adopted*,
    2018 WL 3850635, 2018 U.S. Dist. LEXIS 136075 (Aug. 13, 2018) (Fish, J.)........ 15-16

*Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994,
    2016 U.S. Dist. LEXIS 105391 (N.D. Tex. Aug. 10, 2016) (Boyle, J.)..................... 3, 4

*Murphy v. Grisaffi*, No. CIV.A. 304CV0134B, 2005 WL 598015, 2005 U.S. Dist. LEXIS 3849
    (N.D. Tex. Mar. 14, 2005) (Boyle, J.).............................................................. 5

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556,
  2011 WL 5325785, 2011 U.S. Dist. LEXIS 127526 (S.D. Tex. Nov. 3, 2011)..............6

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2018 WL 2323243,
  2018 U.S. Dist. LEXIS 194527 (N.D. Tex. Mar. 26, 2018) (Kaplan, M.J.), *adopted*,
  2018 WL 2323471, 2018 U.S. Dist. LEXIS 193538 (May 2, 2018) (Boyle, J.)...........4-5

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litigation)*,
  623 F. Supp. 2d 798 (S.D. Tex. 2009).....................................................7, 16-17

*Nix v. Major League Baseball*, 62 F.4th 920 (5th Cir. 2023)........................................ 15

*Raines v. Byrd*, 521 U.S. 811 (1997)................................................................... 1

*Rankin Constr. Nat'l Builders, L.L.C. v. Frank H. Reis, Inc.*, No. 4:17-CV-530-A,
  2018 WL 1305452, 2018 U.S. Dist. LEXIS 39745 (N.D. Tex. Mar. 12, 2018)
  (McBryde, J.)...................................................................................... 12

*Robbins v. State of Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008)......... 16

*Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4851852, 2021 U.S. Dist. LEXIS 200882
  (N.D. Tex. Sept. 10, 2021) (Ramirez, M.J.), *adopted sub nom.*
  *Scott v. Atlas Financial Holdings, Inc.*, 2021 WL 4845779, 2021 U.S. Dist. LEXIS 199858
  (Oct. 18, 2021) (Lynn, C.J.), *affirmed sub nom. Scott v. Wollney*, No. 21-11161,
  2022 WL 4009050, 2022 U.S. App. LEXIS 24860 (5th Cir. Sept. 2, 2022)
  (unpublished)................................................................................... 13-14

*Shandong Yinguang Chem Indus. Joint Stock Co. v. Potter*, 607 F. 3d 1029
  (5th Cir. 2010)................................................................................. 8, 14

*S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986)...............................15

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989).....................2

*Suissi v. Wells Fargo Bank Nat'l Ass'n as Tr. for Soundview Home Loan Tr. 2007-OPT4,
  Asset-Backed Certificates, Series 2007-OPT4*, No. 3:22-CV-01545-E,
  2023 WL 2700721, 2023 U.S. Dist. LEXIS 53613
  (N.D. Tex. Mar. 29, 2023) (Brown, J.).....................................................10-11

*System One Holdings, LLC v. Campbell*, No. B:18-cv-54, 2018 WL 4290459,
  2018 U.S. Dist. LEXIS 153965 (S.D. Tex. Aug. 21, 2018)................................... 14

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134 (5th Cir. 1992).........................6-7

*Thabico Co. v. Kiewit Offshore Servs., Ltd.*, 2:16-CV-427, 2017 WL 175815,
    2017 U.S. Dist. LEXIS 5956 (S.D. Tex. Jan. 17, 2017).................................12-13

*United States v. Marcello*, 537 F. Supp. 1364, 1379 (E.D. La. 1982), *aff'd sub nom.*
    *United States v. Roemer*, 703 F.2d 805 (5th Cir. 1983)......................................... 7

*Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex. 1971)........................................ 12

*Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2017 WL 11639369,
    2017 U.S. Dist. LEXIS 236012 (E.D. Tex. May 1, 2017), *aff'd,*
    938 F.3d 724 (5th Cir. 2019)..................................................................... 6

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019)........................... 3, 4, 6

*Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553 (5th Cir. 2015)................... 4

*Zeal Global Servs. Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303 (N.D. Ga. 2020).. *passim*

*Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912
    (N.D. Tex. Dec. 12, 2018) (Kinkeade, J.).........................................8, 10, 15

**Statutes and Rules**

18 U.S.C. § 1341.................................................................................8

18 U.S.C. § 1343.................................................................................8

18 U.S.C. § 1956...............................................................................8, 9

18 U.S.C. § 1961.................................................................................8

18 U.S.C. § 1962................................................................................. 6

18 U.S.C. § 1964................................................................................. 9

Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b).......................................................11

Rule 9(b), Fed. R. Civ. P........................................................................ *passim*

Rule 12(b)(6), Fed. R. Civ. P...................................................................1, 15

Rule 201, Fed. R. Evid............................................................................2

## MOTION AND BRIEF

Defendants Jody Goodman, Jonathan Goodman, and John Goodman (Movants) hereby move to dismiss all claims of Plaintiff FedEx Supply Chain Logistics and Electronics, Inc. (FedEx) for failure to state a claim. The standard is well known. To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*. In deciding the motion, the Court should accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor. *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). The Court does not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement. *Id.* at 336–37. Under this standard, all of FedEx's claims fail.

A.   **Preliminary Ground for Dismissal of Whole Case as to All Defendants—No Standing**.

In any suit, to establish the prerequisite of standing, "a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is *particularized as to him.*" *Raines v. Byrd,* 521 U.S. 811, 819 (1997) (emphasis added; citations omitted). FedEx fails to meet this requirement under a two-step analysis.

First, the supposedly "stolen" funds on which FedEx bases its claims *did not belong to FedEx when this money was allegedly "laundered."* Specifically, FedEx wired funds into the Goodman Networks (GN) "4352 Account" pursuant to an "automated process" when FedEx was invoiced by GN; allegedly, those funds were then laundered by and to the various Defendants. *See generally* Second Amended Complaint (ECF No. 96) ("SAC") ¶¶ 88-89, 159, 216, 218.

Determinatively, title to the wired funds passed to the beneficiary, GN, as soon as the wire was made. *Zeal Global Servs. Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1317 (N.D. Ga. 2020) ("as a matter of law, title to the wired funds passed to the beneficiary when the funds transfer was completed") (brackets omitted; citations omitted). So, it was actually *GN* money being transferred, not FedEx money.

Following from that, because GN is in bankruptcy, *all* GN creditors are affected by the fact that Defendants allegedly misappropriated and laundered funds from GN. The fact that the funds came from a particular account to which FedEx previously sent money does not give FedEx any greater standing to sue than any other creditor, since it was *GN's* money, not FedEx's, that was allegedly taken by the Defendants. FedEx is simply another creditor of the bankrupt GN, and a creditor of the bankrupt cannot "hijack" a claim that belongs to the bankruptcy estate:

> To avoid hijacking a cause of action that belongs to a bankruptcy estate, the general rule is that a creditor may assert rights that are personal to the creditor but not matters that are generalized for the bankruptcy estate. *E.g., . . . In re Seven Seas Petroleum*, 522 F.3d 575, 584 (5th Cir. 2008) ("If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it."); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.").

*Elswick Co., LLC v. Comm2013 CCRE12 Crossing Mall Rd. LLC (In re Tara Retail Grp., LLC)*, 595 B.R. 215, 224 (Bankr. N.D. W. Va. 2018). Therefore, since FedEx is actually a creditor of GN and had no "title" to the allegedly laundered funds, it should be relegated to the bankruptcy forum.[1] If anyone has a right to pursue the Defendants for diverting GN assets, it is the Trustee (who is, in fact, pursuing such claims). FedEx's claims must be dismissed for lack of independent standing.

---

[1] Per Fed. R. Evid. 201, the Court may take judicial notice that FedEx is taking an *active role* in the co-pending bankruptcy proceedings.

**DEFENDANTS JODY GOODMAN, JONATHAN GOODMAN, AND JOHN GOODMAN'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                                                    **Page | 2**
716990-v2

B.  **FedEx Has Not Stated Any RICO Claim Against Movants or Any Defendants**.

If FedEx's claims are considered on their merits, all RICO claims require "three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *D&T Partners, LLC v. Baymark Partners Mgmt., LLC*, 98 F.4th 198, 205 (5th Cir. 2024) (citations omitted); *Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, 2016 U.S. Dist. LEXIS 105391, *33 (N.D. Tex. Aug. 10, 2016) (Boyle, J.). FedEx has not plead these elements as required in this Circuit. "We must be wary of transforming business-contract or fraud disputes into federal RICO claims." *CADG Erwin Farms, LLC v. Ipour*, No. No. 3:22-cv-02896-M, 2024 WL 1394501, *5, 2024 U.S. Dist. LEXIS 59259, *13 (N.D. Tex. March 31, 2024) (Lynn, J.) (citation omitted). "The [RICO] statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Ausley v. Cross County Water Supply Corp.*, No. A-09-CA-660-SS, 2010 WL 5647119, 2010 U.S. Dist. LEXIS 140947, *23 (W.D. Tex. Apr. 16, 2010) (citation omitted).

1.  No Enterprise: A RICO plaintiff must plead an enterprise with specificity. *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002). "[P]laintiffs in RICO claims must 'plead specific facts, not mere conclusory allegations which establish the enterprise.'" *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988) (citation omitted). "Finally, a RICO plaintiff must plead the specified facts as to each defendant. It cannot . . . lump[ ] together the defendants." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (citations omitted). FedEx fails on all counts.

"While the RICO statute defines 'enterprise' broadly to include a 'group of individuals associated in fact although not a legal entity,' . . . an association-in-fact enterprise must have an existence 'that can be defined apart from the commission of the predicate acts.'" *Guardino v. Hart*,

No. 22-20278, 2023 WL 3818378, *5, 2023 U.S. App. LEXIS 13890, *12 (5th Cir. June 5, 2023) (unpublished) (citations omitted). In SAC paragraph 481, FedEx alleges: "The Enterprise in this case consists of each of the Defendants." This is insufficient. Under RICO, the alleged enterprise "must exist for purposes other than just to commit predicate acts." *Walker*, 938 F.3d at 738 (citations omitted); *see also Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (affirming summary judgment against RICO claim because "Zastrow's complaint alleges an enterprise created by the alleged racketeering activity itself. This is obviously not sufficient to plead the existence of an enterprise 'separate and apart from the pattern of racketeering activity in which it engages.'") (citation omitted); *Murex*, 2016 U.S. Dist. LEXIS 105391, *35. Although FedEx alleges that a number of persons and entities exist, it fails to tie them all together on any other basis than that they were attempting to steal and launder money FedEx claims belonged to it, which is nothing more than "the racketeering activity itself." This pleading defect is dispositive as to the RICO claim.

    2.    <u>No Pattern of Racketeering Activity</u>: To show the additional requisite of a pattern of racketeering activity "'requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.' *In re MasterCard Int'l, Inc.*, 313 F.3d 257, 261-62 (5th Cir. 2002). 'A plaintiff may satisfy this requirement by demonstrating either close-ended or open-ended continuity. Close-ended continuity exists when a series of related predicates extends over a substantial, closed period of time. By contrast, open-ended continuity exists when there is threat that the occurrence or predicate acts will extended indefinitely into the future.'" *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2018 WL 2323243, *10, 2018 U.S. Dist. LEXIS 194527, *29-30 (N.D. Tex. Mar. 26, 2018) (Kaplan, M.J.) (citation omitted), *adopted*, 2018 WL 2323471, 2018 U.S. Dist.

LEXIS 193538 (May 2, 2018) (Boyle, J.).

FedEx tries to make this showing by alleging that Defendants participated in defrauding *only* FedEx. Construing the Second Amended Complaint in FedEx's favor, certain Defendants (using an "and/or" connector) "as of November 3, 2021" caused or permitted "continued invoices" to be sent to FedEx—prompting FedEx to pay the invoices—"with no intention to pay [FedEx] any sums back." SAC ¶ 159. FedEx alleges the alleged invoicing occurred from *November 3, 2021, through May 19, 2022* (SAC ¶¶ 160-215)—a period of time *just over 6 months*. FedEx then provides a chart showing the "ringleader" Frinzi making transfers out of the 4352 Account (SAC paragraph 249), covering December 16, 2021, through July 7, 2022—of roughly *7½ months*.

"Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants **directed towards a single victim** do not satisfy the RICO requirement of closed or open pattern continuity." *Nerium SkinCare*, 2018 WL 2323243, *10, 2018 U.S. Dist. LEXIS 194527, *30 (emphasis added; citation omitted),; *see also Murphy v. Grisaffi*, No. CIV.A. 304CV0134B, 2005 WL 598015, 2005 U.S. Dist. LEXIS 3849, *13-19 (N.D. Tex. Mar. 14, 2005) (Boyle, J.) (granting a motion to dismiss where plaintiff's allegations did not establish the continuity element of a RICO violation); *Boroja v. Roux*, No. 1-22-CV-01299-RP, 2023 WL 4054689, *7–8, 2023 U.S. Dist. LEXIS 104842, *20-21 (W.D. Tex. June 15, 2023) (finding allegations of transfer of assets *over a seven-month period* with no future criminal conduct to be insufficient to plead the continuity requirement), *adopted*, 2023 WL 4356691, 2023 U.S. Dist. LEXIS 114740 (July 5, 2023). As the Fifth Circuit similarly noted:

> Simply put, what began as an ordinary business transaction ended with stolen assets, a defunct company, and many unhappy creditors. Even if Defendants engaged in fraudulent acts in the interim, the complaint alleges that the acts arose in pursuit of a single end: transferring Global's assets to Windspeed. While the plan ultimately took several years to realize, the number of victims and the nature and

objective of the alleged scheme do not support an inference of a closed-ended pattern of racketeering activity.

*D&T Partners, L.L.C.*, 98 F.4th at 208. On the face of FedEx's pleadings, no close-ended nor open-ended continuity exists, so the requirement of a pattern of racketeering activity is not pled.

    3.    <u>No RICO Conspiracy Liability</u>:

First, as FedEx cannot plead a RICO claim under 18 U.S.C. §§ 1962(a)-(c), FedEx's conspiracy claim under 18 U.S.C. § 1962(d) automatically fails. *See N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-cv-2556, 2011 WL 5325785, *8, 2011 U.S. Dist. LEXIS 127526, *22 (S.D. Tex. Nov. 3, 2011) (holding that plaintiff's failure to plead the elements of §§1962(a)-(c) necessarily means plaintiff "cannot plead a conspiracy to violate either section") (citation omitted).

Second, in order to show a RICO conspiracy, FedEx had to plead that two or more persons, including John, Jody, and Jonathan Goodman (and each specifically, not all amorphously by group pleading, *see Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019)), agreed to commit a substantive RICO offense and that each alleged conspirator knew of and agreed to the overall objective of the RICO offense. There must be an agreement involving each of the alleged conspirators to commit at least two predicate acts. Each alleged conspirator must understand the scope of the enterprise and knowingly agree to further its affairs through committing substantive RICO offenses. *See Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2017 WL 11639369, 2017 U.S. Dist. LEXIS 236012, *24 (E.D. Tex. May 1, 2017), *aff'd*, 938 F.3d 724 (5th Cir. 2019), citing 18 U.S.C. § 1962(d); *accord, Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) ("A conspirator must at least know of the conspiracy and 'adopt the goal of furthering or facilitating the criminal endeavor.'") (citation omitted), *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,

975 F.2d 1134, 1140-41 (5th Cir. 1992) (civil RICO conspiracy claim must plead agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity), *United States v. Marcello*, 537 F. Supp. 1364, 1379 (E.D. La. 1982) ("The gravamen of the RICO conspiracy charge is that 'each agreed to participate, directly and indirectly, in the affairs of the enterprise by committing two or more predicate crimes...'") (citation omitted), *aff'd sub nom. United States v. Roemer*, 703 F.2d 805 (5th Cir. 1983).

"Under Rule 9(b), conspiracy to commit fraud must be pleaded with particularity as to time, place, and contents of false representations and the identity of the person making them and what he obtained thereby. *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994)." *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litigation)*, 623 F. Supp. 2d 798, 811 n.11 (S.D. Tex. 2009). There are no Rule 9(b) specific "who, what, when, where, and how" allegations of the required conspiracy participation by Movants in the SAC, especially as to Jody and Jonathan. To the contrary, they are only alleged to have received some payment from GN knowing the money came from the GN account where funds wired by FedEx were deposited. SAC ¶¶ 390, 391, 392, 405, 406, and 409. This is insufficient as a matter of law.

Basically, the allegations as to Movants Jody and Jonathan are that they acted in their GN director capacities to conspire with GN and other of GN's officers/directors/employees to launder funds from the GN 4352 Account to themselves. SAC ¶¶ 405-406. However, the acts of an agent and its principal are the acts of a single entity and cannot constitute conspiracy. *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 91 (Tex. App.—El Paso 1998, no pet). By extension, because a corporation cannot conspire with itself, corporate agents cannot conspire with each other when they participate in corporate action. *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App.—Eastland 2008, no pet.). Consequently, the conspiracy claim fails.

4.  <u>No Predicate Acts</u>: FedEx's RICO claims also fail to allege predicate illegal actions taken by Movants. To plead a RICO claim based on <u>mail or wire fraud</u> (18 U.S.C. § 1961(1), referencing 18 U.S.C. §§ 1341, 1343, respectively), *see* SAC ¶ 484, FedEx must allege "a scheme to defraud *by means of false or fraudulent representation.*" *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (emphasis added). "When a plaintiff asserts a civil RICO claim that rests upon the predicate act of wire fraud, the complaint must satisfy Rule 9(b)'s particularity requirement. A complaint must, in other words, identify a particular instance of wire fraud, explain the defendant's relationship to the wire fraud, and describe when or how the fraud occurred and why a particular act was fraudulent." *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912, *9 (N.D. Tex. Dec. 12, 2018) (Kinkeade, J.) (citations omitted). FedEx does not allege that John, Jody, or Jonathan made a single representation, false or otherwise, to FedEx. In fact, FedEx never alleges any Movant *ever* contacted or communicated with FedEx about *any* subject.[2] Per the SAC, Movants have never spoken to FedEx, and there is no allegation (much less one pled with particularity) outlining any fraudulent statements made by Movants, much less statements on which the Defendants could or reasonably did rely. *See Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972–73 (N.D. Tex. 2014), citing *Shandong Yinguang Chem Indus. Joint Stock Co. v. Potter*, 607 F. 3d 1029, 1032–33 (5th Cir. 2010).

FedEx's <u>money laundering</u> predicate act allegations, *see* SAC ¶ 482, are also flawed. To establish money laundering under 18 U.S.C. § 1956, a plaintiff must plead a defendant's knowledge or belief that the money involved was the proceeds of a "specified unlawful activity."

---

[2] <u>Note</u>: ***John*** Goodman allegedly made representations in the *bankruptcy* proceedings. SAC ¶¶ 465-468, 594(d). But again, these are *generalized* claims of all creditors and, if actionable at all, gave rise to claims by the *Trustee*, not individual creditors; indeed, the Trustee is reported to have *settled* claims regarding John, SAC ¶ 469, undercutting FedEx's standing to complain in this action.

**DEFENDANTS JODY GOODMAN, JONATHAN GOODMAN, AND**
**JOHN GOODMAN'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **Page | 8**
716990-v2

*Armendariz v. Chowaiki*, No. EP-14-CV-451, 2016 WL 8856919, *14, 2016 U.S. Dist. LEXIS 191605, *39 (W.D. Tex. Mar. 31, 2016); 18 U.S.C. §§ 1956(a)(1), (a)(3). "Specified unlawful activity" is defined by 18 U.S.C. § 1956(c)(7) as a lengthy litany. FedEx does not allege from *which* statutorily-specified unlawful activity Movants knew or believed the money was derived. Rather, FedEx makes conclusory allegations that Movants knew or should have known that the funds were "stolen." These fact-free conclusory allegations are insufficient to establish money laundering as a predicate act. *See Armendariz*, 2016 WL 8856919, *14, 2016 U.S. Dist. LEXIS 191605, *39-40.

  5. No Injury to FedEx Business or Property: To have standing to bring a RICO claim, FedEx must allege that Movants' commission of a predicate act caused some injury to FedEx's business or property. 18 U.S.C. § 1964(c). FedEx does not and cannot make this showing because the supposedly laundered money did not belong to FedEx. Rather, the money belonged to GN the instant GN received the wire. *Zeal Global*, 508 F. Supp. 3d at 1317.

  6. Conclusion: The RICO claims must be dismissed on the alternative or cumulative grounds of (a) no enterprise; (b) no pattern of racketeering activity due to no continuity; (c) no conspiracy; (d) no predicate acts; and (e) no standing due to no injury to FedEx's business or property, as the property allegedly laundered was not owned by FedEx.

**C.** **As All Other Claims Are Based on State Law and There is No Diversity Jurisdiction, Dismissal of the RICO Claims Calls for Dismissal of All Other Claims as Well.**

  As shown, the RICO claims against Movants (*and against the other Defendants*) must be dismissed. All other claims are based on State law, and there is no diversity jurisdiction alleged or existing. Plaintiff is a Delaware resident, SAC ¶ 29, and Defendants Multiband Field Services, Inc., HSB Holdings, LLC, AMR Resources, Hudson Clean Energy Enterprises, LLC, and

Auerbach Partners, LP, are identified as a Delaware corporation, limited liability companies, and

a limited partnership, respectively. SAC ¶¶ 46-50. Therefore, all claims should be dismissed.

> "[The] general rule is to dismiss state claims when the federal claims to which they
> are pendent are dismissed." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir.
> 2011). This rule typically controls "when all federal-law claims are eliminated
> before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595,
> 602 (5th Cir. 2009). Because the civil RICO claim has been dismissed early in the
> stages of litigation, and all other claims for relief are state-law claims, the Court
> declines to retain supplemental jurisdiction over Plaintiffs' remaining claims.
> *Enochs*, 641 F.3d at 159-60 (explaining the statutory and common-law factors that
> govern a district court's decision to retain supplemental jurisdiction over state-law
> claims after dismissing the federal claims). The Court therefore has no jurisdiction
> over this case.

*Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912, *29

(N.D. Tex. Dec. 12, 2018) (Kinkeade, J.).

D.   **Additionally, All State Law Claims Should Be Dismissed on the Merits**.

   1.   The Economic Loss Rule Bars All State Law Tort Claims.

FedEx's conversion, unjust enrichment, fraud, and conspiracy claims are all barred by the

economic loss doctrine. The economic loss rule "generally precludes recovery in tort for economic

losses resulting from the failure of a party to perform under a contract." *Suissi v. Wells Fargo Bank*

*Nat'l Ass'n as Tr. for Soundview Home Loan Tr. 2007-OPT4, Asset-Backed Certificates, Series*

*2007-OPT4*, No. 3:22-CV-01545-E, 2023 WL 2700721, *4, 2023 U.S. Dist. LEXIS 53613, *9-10

(N.D. Tex. Mar. 29, 2023) (Brown, J.) (citations omitted). "[T]ort damages are generally not

recoverable if the defendant's conduct would give rise to liability only because it breaches the

parties' agreement." *Id.*, 2023 U.S. Dist. LEXIS 53613, *10 (citations omitted). "In determining

whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1)

whether the claim is for breach of a duty created by contract, as opposed to a duty imposed by law;

and 2) whether the injury is only the economic loss to the subject of the contract itself." *Id.* FedEx admits that the money it seeks to recover was subject to a valid contract—the Master Services Agreement—and that the money in the 4352 Account came in as a result of that MSA. Thus, FedEx's alleged injury "is only the economic loss to the subject of the contract itself," and FedEx's tort claims are barred by the economic loss doctrine. In addition, each claim also fails on its merits.

  2. <u>Theft Liability Act</u>.

  The TTLA claim must be dismissed because Movants could not have "knowingly received stolen funds" when the funds *actually belonged to GN*, not FedEx. *See Zeal Global Servs. Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1317 (N.D. Ga. 2020), *supra* ("as a matter of law, title to the wired funds passed to the beneficiary when the funds transfer was completed.") (brackets omitted; citations omitted). Whether or not FedEx has any basis to claim that GN *breached its contract* to *remit **money*** to FedEx does not render the *account funds themselves stolen* (as GN had the right to receive the funds and a contractual obligation to then pay FedEx a certain percentage of the funds received).

  Further, because Movants are the prevailing party with respect to this TTLA claim, they are entitled to recover attorney's fees incurred in connection with defending against that claim:

> Section 134.005(b) of the TTLA provides that "[e]ach person who prevails in a suit under this chapter **shall be awarded** court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b). The award of fees to a prevailing party in a TTLA action is mandatory.

*Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (emphasis added; citation omitted).

  3. <u>Conversion</u>.

  FedEx has not stated a viable conversion claim against these Defendants. As with the other

claims, FedEx seeks to hold these Defendants liable for "conversion" and "theft" because they knew that the source of the funds paying them came from funds originally held in GN's 4352 Account, which, in turn, came from FedEx.

This claim is doomed for three reasons. First, to establish a claim for conversion, FedEx must allege that it *owned* the money in the 4352 Account. *Rankin Constr. Nat'l Builders, L.L.C. v. Frank H. Reis, Inc.*, No. 4:17-CV-530-A, 2018 WL 1305452, *3, 2018 U.S. Dist. LEXIS 39745, *8-9 (N.D. Tex. Mar. 12, 2018) (McBryde, J.). But under FedEx's factual allegations, the money in the GN Master Services Agreement Account belonged to GN. *Zeal Global*, *supra*, 508 F. Supp. 3d at 1317; *see also Encinas v. Jackson*, 553 S.W.3d 723, 727 (Tex. App.—El Paso 2018, no pet.) (holding that money "is subject to conversion only when it can be identified as a specific chattel," and that no conversion occurs "where an indebtedness may be discharged generally by the payment of money") (citations omitted).

Second, FedEx does not allege the Movants wrongfully exercised dominion and control over FedEx's property. "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971) (citations omitted). FedEx cannot make this showing because its own pleading establishes that the transfers from GN to the Defendants were subject to negotiated contracts approved by the legal owner of the funds at issue, i.e., approved by GN. *See Thabico Co. v. Kiewit Offshore Servs., Ltd.*, 2:16-CV-427, 2017 WL 175815, *3, 2017 U.S. Dist. LEXIS 5956, *8 (S.D. Tex. Jan. 17, 2017) (property received pursuant to a contract is not subject to a conversion claim).

Third, to state a claim for conversion, FedEx must demonstrate that the Defendants "had no lawful claim to the property." *Thabico Co.*, No. 2:16-CV-427, 2017 WL 175815, *3, 2017 U.S.

Dist. LEXIS 5956, *7-8. FedEx cannot make that showing, because its own pleading establishes that the transfers to the Movants from GN were subject to negotiated contracts approved by the legal owner of the funds at issue, GN.

  4. Unjust Enrichment.

  FedEx purports to state a claim against these Defendants for unjust enrichment based on their receipt of supposedly stolen funds. But FedEx's allegations against these Defendants cannot support an unjust enrichment claim. "A plaintiff may recover for unjust enrichment if the defendant has obtained a benefit *from [him]* by fraud, duress, or the taking of an undue advantage." *Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4851852, *4, 2021 U.S. Dist. LEXIS 200882, *13 (N.D. Tex. Sept. 10, 2021) (Ramirez, M.J.) (emphasis added; citation omitted), *adopted sub nom. Scott v. Atlas Financial Holdings, Inc.*, 2021 WL 4845779, 2021 U.S. Dist. LEXIS 199858 (Oct. 18, 2021) (Lynn, C.J.), *affirmed sub nom. Scott v. Wollney*, No. 21-11161, 2022 WL 4009050, 2022 U.S. App. LEXIS 24860 (5th Cir. Sept. 2, 2022) (unpublished). First, FedEx's pleading shows the alleged benefit was not *from FedEx*, but rather *from GN*, since the funds belonged to GN once wired into GN's account. *Zeal Global*, 508 F. Supp. 3d at 1317. Second, there was no "fraud, duress, or taking of undue advantage" of FedEx by Movants, as they are not alleged to have interacted with, or made any representations to, FedEx.[3]

  In addition to that, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Scott v. Wollney*, 2021 WL 4851852, *4, 2021 U.S. Dist. LEXIS 200882, *13 (citation omitted). "This rule is applicable not only when the plaintiff is seeking to recover in

---

[3] *See* n.2 *supra* as to *John* Goodman.

equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance." *Id.* (citation omitted). FedEx admits that the money it seeks to recover was subject to a valid contract—the Master Services Agreement—so its unjust enrichment claim fails. This claim is also barred by the economic-loss rule. "A party cannot recover on such a theory where the subject matter is covered by an express contract, even where the parties to the lawsuit are not in privity." *Ambulatory Servs. of P.R., LLC v. Sankar Nephrology Grp., LLC*, No. 4:18-CV-916-A, 2019 WL 4192738, *9, 2019 U.S. Dist. LEXIS 150273 (N.D. Tex. Sept. 3, 2019) (McBryde, J.); *see also System One Holdings, LLC v. Campbell*, No. B:18-cv-54, 2018 WL 4290459, *4, 2018 U.S. Dist. LEXIS 153965, *10 (S.D. Tex. Aug. 21, 2018) (recognizing unjust enrichment claims against third parties to a contract are barred by the existence of a contract).

     5.   <u>Common Law Fraud.</u>

Under Texas law, fraud claims require a complainant to plead facts establishing, among other things, a material representation by the defendant made to the plaintiff, that the plaintiff relied upon. *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972–73 (N.D. Tex. 2014) (citing *Shandong Yinguang Chem Indus. Joint Stock Co. v. Potter*, 607 F. 3d 1029, 1032–33 (5th Cir. 2010)). Generally, to state a fraud claim under Texas state law, a plaintiff must allege that:

> (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citations omitted). "When a plaintiff alleges claims sounding in fraud, they must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b)." *Energium Health v. Gabali*,

No. 3:21-CV-2951-S, 2023 WL 6392631, *3, 2023 U.S. Dist. LEXIS 175693, *7 (N.D. Tex. Sept. 29, 2023) (Scholer, J.), citing *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). "In other words, a plaintiff must provide the 'who, what, when, where, and how' of the alleged fraud." *Id*. FedEx has not alleged that any Movant made any representations *to FedEx*, much less any representations that were material or false, much less relied upon by FedEx, much less with the specificity required by Rule 9(b).[4]  As a result, the Court should dismiss FedEx's common law fraud claims against these Defendants.

      6.    <u>Civil Conspiracy</u>.

Finally, FedEx seeks to hold all Defendants liable for "civil conspiracy," which FedEx describes as "one to steal funds from [FedEx] and the [sic] launder them." SAC ¶ 822. First, FedEx uses a "shotgun" pleading approach and invokes the RICO conspiracy claims to support its common-law conspiracy claim. *See* SAC ¶¶ 819-823.[5] FedEx's conclusory conspiracy claims as to theft and "laundering" by these Defendants fail as a matter of law. There are *no* specific facts alleged in Cause No. 7 related to common law conspiracy. This claim consists of less than a page, SAC at 154-155. It is merely a "shotgun" invocation of all prior allegations in the previous *154 pages*. This alone requires dismissal:

> Such pleadings are subject to dismissal under Rule 12(b)(6), *see id*., particularly where, like here, "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick," *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986), because asserting claims in this manner — that is, "by merely attaching a label and/or legal conclusion to no facts unique to that claim — or, at best, threadbare unique facts — is not sufficient to

---

[4] *See* n.2 *supra* as to *John* Goodman.

[5] "Complaints of this type set forth an excessive number [of] facts before alleging that all the provided facts support various counts in the complaint, with the result that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912, *8-9 (N.D. Tex. Dec. 12, 2018) (Kinkeade, J.) (citation and internal quotation marks omitted).

state a claim that is plausible on its face," *Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 U.S. Dist. LEXIS 178201, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017), *rec. adopted*, 2017 U.S. Dist. LEXIS 177890, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017). "Put another way, these claims as alleged each lack sufficient facts to support an inference that [the] defendant is responsible for a particular harm to [the plaintiff] - therefore there is no 'more than the mere possibility of misconduct,' which, of course, is not enough to state a plausible claim." *Id.* (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. State of Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556))).

*Moore v. Carrington Mortg. Servs., LLC*, No. 3:17-cv-3132-G-BN, 2018 WL 3853711, 2018 U.S. Dist. LEXIS 136288, *8-9 (N.D. Tex. July 17, 2018) (Horan, M.J.), *adopted*, 2018 WL 3850635, 2018 U.S. Dist. LEXIS 136075 (Aug. 13, 2018) (Fish, J.).[6]

Second, this claim should also be dismissed for the same reasons as the RICO conspiracy claim. *See* Part B.3 *supra*. Also, these allegations are not compliant with Rule 9(b) insofar as they are based on fraud. *See Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litigation)*, 623 F. Supp. 2d 798, 811, n.11 (S.D. Tex. 2009).

Third, for a civil conspiracy claim, the "defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." *Baker*, 64 F. Supp. 3d at 980 (citations omitted). "[L]iability for a civil conspiracy depends on participation in an underlying tort." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citation omitted). Because the other torts alleged by FedEx fail for the reasons stated herein, FedEx's conspiracy claim also fails.

Fourth, to have a conspiracy, "[t]here must be an agreement or understanding between the

---

[6] Given that this is already the *Second* Amended Complaint (third bite at the apple), this dismissal should be *with prejudice*. *See May v. City of Arlington*, 398 F. Supp. 3d 68, 89 (N.D. Tex. 2019) (Lindsay, J.) ("three bites at the apple").

conspirators to inflict a wrong against, or injury on, another, a meeting of the minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." *Newby*, 623 F. Supp. 2d at 809 (citation omitted). The conspiracy claim simply fails to allege this and should be dismissed.

Fifth, if the Court were nonetheless inclined to scrutinize all 154 pages in search of sufficient conspiracy-to-steal-or-launder allegations against Movants, it will find virtually nothing as to Movants Jonathan and Jody. The allegations against them come under the "heading" of "**The Goodmans Pull Cash Out of Goodman Networks**" at page 68, and specifically SAC ¶¶ 390, 391, 392, 405, 406, and 409. FedEx alleges, in effect, that Jonathan and Jody "were paid six figure sums from Goodman Networks in 'severance benefits', and 'upfront contractor money.'" SAC ¶ 390. Suffice it to say, this is far too little to pin conspiracy liability on them under the standards set forth in *Newby*, *supra*, 623 F. Supp. 2d at 809. At a minimum, then, to the extent *any* claims should be maintained *at all* in light of RICO dismissal, the common law conspiracy claim against Jonathan and Jody must be dismissed.

Additionally, as to Movants Jody and Jonathan, they are alleged to have acted in their director capacities with GN in conspiring with GN and other of GN's officers/directors/employees to launder the funds of GN from the 4352 Account to themselves. As mentioned previously as to the RICO conspiracy claim, the acts of an agent and its principal are the acts of a single entity and cannot constitute conspiracy. *Lyons*, 985 S.W.2d at 91. By extension, because a corporation cannot conspire with itself, corporate agents cannot conspire with each other when they participate in corporate action. *Crouch*, 262 S.W.3d at 427. Therefore, the common-law conspiracy claim as to them also fails.

Finally, as to John, FedEx voices additional grievances. *See* SAC ¶¶ 294-206, 433, 439-440, 441-452, 453-470, 471-478, 503-510, 588-596. However, many of the allegations pertain to his role in attempting to monitor and direct the *bankruptcy* proceedings on behalf of GN, which, out of mere necessity had to be handled by *someone* on GN's behalf. John "drew the short straw" in that regard. Those matters should be taken up, if at all, before the *bankruptcy* court handling the bankruptcy estate and not in a freewheeling conspiracy claim as is attempted by FedEx here. In any event, FedEx should not be permitted to foist on the Court (or on Defendants) the task of dissecting the 154-pages of pleadings in search of allegations that support a single-page, conclusory conspiracy claim.

**WHEREFORE**, the SAC should be dismissed as to Movants Joseph "Jody" Goodman, Jonathan Goodman, and John Goodman.

Respectfully submitted,

/s/ David A. Skeels
David A. Skeels
Texas Bar No. 24041925
dskeels@whitakerchalk.com
Lead Counsel in Charge

Robert A. Simon
Texas Bar No. 18390000
rsimon@whitakerchalk.com

Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
FAX:  (817) 878-0501

**ATTORNEYS FOR DEFENDANTS
JODY GOODMAN, JONATHAN GOODMAN,
AND JOHN GOODMAN**

## CERTIFICATE OF SERVICE

I hereby certify that I e-filed this document using the Court's ECF protocol on July 2, 2024, and thereby e-served all counsel of record who have appeared.

/s/ David A. Skeels
David A. Skeels

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| | ) Civil Action No. 3:23-cv-02397 |
| v. | ) ) |
| JAMES E. GOODMAN, JR., *et al.*, | ) ) |
| Defendants. | ) ) |

---

**PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO
MOTIONS TO DISMISS [DKT. NOS. 104, 107, 110, 111 AND 115]
AND INCORPORATED MEMORANDUM OF LAW**

---

**BUTLER SNOW LLP**

By: /s/ Daniel W. Van Horn
DANIEL W. VAN HORN  (Pro Hac Admitted)
S. Keenan Carter (TX Bar No. 24006966)
R. CAMPBELL HILLYER (Pro Hac Admitted)
ADAM M. LANGLEY (Pro Hac Admitted)
KATHERINE KUCHENBECKER (Pro Hac Admitted)
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 (fax)
Danny.VanHorn@butlersnow.com
Keenan.Carter@ButlerSnow.com
Cam.Hillyer@butlersnow.com
Adam.Langley@butlersnow.com
Katherine.Kuchenbecker@butlersnow.com

SAYLES LAW FIRM
RICHARD A. SAYLES
Texas Bar No. 17697500
dsayles@sayleslawfirm.com
5600 W. Lovers Lane, Suite 116-363
Dallas, Texas 75209
(214) 643-8030 (Telephone)

FEDERAL EXPRESS CORPORATION
JASON R. BERNHARDT
Texas Bar No. 24045488
jasonbernhardt@fedex.com
3620 Hacks Cross Road, Building B
Memphis, Tennessee 38125
(901) 434-3213 (Telephone)
(901) 434-9279 (Fax)

**COUNSEL FOR PLAINTIFF FEDEX SUPPLY
CHAIN LOGISTICS & ELECTRONICS, INC.**

## CERTIFICATE OF SERVICE

  I certify that a true and correct copy of the foregoing motion has been served on all counsel of record via the Court's CM/ECF system this the 26th day of July 2024 upon:

      By: */s/ Daniel W. Van Horn*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION & SUMMARY OF ARGUMENT ................................................... 1

LAW AND ARGUMENT ................................................................................................ 6

I.    FSCLE More Than Adequately Pled its RICO Claims. ....................................... 6

    A.  FSCLE Has Pled a Pattern of Racketeering Activity ....................................... 6

        (1) Predicate Acts of Theft – 18 U.S.C. § 1961 ............................................. 7

        (2) Predicate Acts of Mail/Wire Fraud – 18 U.S.C. §§ 1341/1343 ............... 8

        (3) Predicate Acts of Bank Fraud – 18 U.S.C. § 1344 ................................. 9

        (4) Predicate Acts of Money Laundering – 18 U.S.C. § 1956 ..................... 10

        (5) Predicate Acts of Sending/Receiving Stolen Funds – 18 U.S.C. §§ 2314/2315 ...... 11

        (6) FSCLE Has Pled Sufficient Continuity. ................................................. 12

    B.  FSCLE Has Pled the Existence of An Enterprise. ........................................... 16

    C.  Joint and Several Liability of the Members of the Enterprise. ....................... 19

II.   FSCLE Adequately Pled its Claims Under the Texas Theft Liability Act and Common Law Theft. ............................................................................................. 20

III.  FSCLE Adequately Pled its Unjust Enrichment Claim. ....................................... 21

IV.   FSCLE Adequately Pled its Fraud Claims ........................................................... 22

V.    FSCLE Adequately Pled its Tortious Interference Claim ..................................... 23

VI.   FSCLE Adequately Pled its Conspiracy Claim. ................................................... 25

VII.  Prosperity Bank's Liability to FSCLE as Assignee of the Goodman Networks Bankruptcy Estate. ............................................................................................... 26

VIII. Goodman Networks is Not a Necessary Party. ..................................................... 27

IX.   The Claims Against Judith Auerbach are Timely Filed ......................................... 29

X.    The Court Has Personal Jurisdiction Over All Defendants. ................................. 30

CONCLUSION ................................................................................................................. 30

## TABLE OF AUTHORITIES

PAGE(S)

**OTHER AUTHORITIES**

*A. Benjamini, Inc. v. Dickson,*
   2 S.W.3d 611 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ................................. 8

*AAB Logistics, Inc. v. Forward Air, Inc.,*
   2016 WL 8672773 (N.D. Tex. Nov. 18, 2016) ................................. 1, 8, 20

*Abraham v. Singh,*
   480 F.3d 480 F.3d. 351 (5th Cir. 2007) ................................. 14

*Adhikari v. Daoud & Partners,*
   697 F.Supp.2d 674 (S.D.Tex.2009) ................................. 17

*Agar Corp Inc. v. Electro Cirs, Int'l, LLC,*
   580 S.W.3d 136, 141 (Tex. 2019) ................................. 25

*Allstate Ins. Co. v. Michael Kent Plambeck, D.C.,*
   2014 WL 1303000 (N.D. Tex. Mar. 31, 2014) ................................. 17

*Amoco Prod. Co. v. Smith,*
   946 S.W.2d 162 (Tex. App.—El Paso, 1997, no writ) ................................. 22

*Boyle v. United States,*
   556 U.S. 938 (2009) ................................. 17

*Bradley v. Phillips Petroleum Co.,*
   527 F.Supp.2d 625 (S.D. Tex. 2007) ................................. 9

*Brown v. Johnson & Johnson,*
   2012 WL 2134304 (N.D. Tex. Apr. 19, 2012) ................................. 29

*Burlington Northern R.R. Co. v. Southwestern Elec. Power Co.,*
   925 S.W.2d 92 (Tex. App.—Texarkana 1996, no writ) ................................. 22

*Cartwright v. Ghattas,*
   2010 WL 11506415 n.6 (W.D. Tex. March 16, 2010) ................................. 19

*Cmty. Health Sys. Pro. Sers. Corp. v. Hansen,*
   525 S.W. 3d 671 (Tex. 2017) ................................. 23

*Com. Metals Co. v. Chazanow,*
   2009 WL 3853704 (N.D. Tex. Nov. 17, 2009) ................................. 15

*Compass Bank v. Villarreal,*
   2011 WL 1740270 (S.D. Tex. May 5, 2011) ................................. 21

*Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.,*
   113 F.3d 308 (2d Cir. 1997) ................................. 15

*Cypress/Spanish Ft. 1, L.P. v. Pro Serv. Indus., Inc.,*
   814 F.Supp.2d 698 (N.D. Tex. 2011) ................................. 14, 15

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.,*
 98 F.4th 198 (5th Cir. 2024) ................................................................. 13, 14, 15, 16

*D'a Petro., LLC v. Buster,*
2020 U.S. Dist. LEXIS 262937 (N.D. Tex. Aug. 17, 2020) ............................................. 9

*DHI Group, Inc. v. Kent,*
 397 F. Supp. 3d 904 (S.D. Tex. 2019) ................................................................. 14

*Doss v. Homecoming Financial Network, Inc.,*
 210 S.W.3d 706 (Tex. App.—Corpus Christi 2006, pet. denied) ............................ 22

*E. Poultry Distribs., Inc. v. Puez,*
 2001 U.S. Dist. LEXIS 27007 (N.D. Tex. Dec. 3, 2001) ........................................ 1

*Elliott v. Foufas,*
 867 F.2d 877 (5th Cir.1989) ................................................................. 17

*Essilor International SAS v. JP Morgan Chase Bank, N.A.,*
 650 F.Supp.3d 62 (S.D.N.Y. 2023) ................................................................. 27

*First Nat'l Bank & Trust Co. v. Hollingsworth,*
 931 F.2d 1295 (8th Cir. 1991) ................................................................. 14

*H.J. Inc. v. Nw. Bell Tell. Co.,*
 492 U.S. 229 (1989) ................................................................. passim

*Hewlett-Packard Co. v. Byd:Sign, Inc.,*
 2007 WL 275476 (E.D. Tex. Jan. 25, 2007) ................................................ 14, 15

*Holloway v. Skinner,*
 898 S.W.2d 793 (Tex. 1995) ................................................................. 24

*Hood ex rel. Ms. v. City of Memphis, Tn.,*
 570 F.3d 625 (5th Cir. 2009) ................................................................. 28

*HS Res., Inc. v. Wingate,*
 327 F.3d 432 (5th Cir. 2003) ................................................................. 28

*Hunt v. Baldwin,*
 68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ............................ 22

*In re Burzynski,*
 989 F.2d 733 (5th Cir.1993) ................................................................. 6, 7, 12, 16

*Landry v. Airline Pilots Ass'n Intern. AFL-CIO,*
 901 F.2d 404 (5th Cir. 1990) ................................................................. 9

*Liquid Air Corp. v. Rogers,*
 834 F.2d 1297 (7th Cir. 1987) ................................................................. 14, 15

*Matter of Approximately $80,600.00,*
 537 S.W.3d 207 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) .................... 8

*Matter of Okedokun,*
 968 F.3d 378 (5th Cir. 2020) ................................................................. 8

*Regalado Cuellar v. United States,*
   553 U.S. 550 (2008) ............................................................................. 10

*Resol. Trust Corp. v. Stone,*
   998 F.2d 1534 (10th Cir. 1993) ........................................................... 14

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993)............................................................................. 19

*Rolls-Royce Corp. v. Heros, Inc.,*
   576 F.Supp. 2d 765 (N.D. Tex. 2008) ................................................ 30

*Sinclair Houston Fed. Credit Union v. Hendricks,*
   268 S.W.2d 290 (Tex. Civ. App.—Galveston 1954, writ ref'd n.r.e.) ...................... 8

*Sonnier v. State Farm Mut. Auto Ins. Co.,*
   509 F.3d 673 (5th Cir. 2007) ............................................................... 1

*St. Paul Mercury Ins. Co. v. Williamson,*
   224 F.3d 425 (5th Cir. 2000) ...................................................... 6, 17, 18

*Staats v. Miller,*
   150 Tex. 581, 243 S.W.2d 686 (Tex.1951) ......................................... 22

*Taylor Pipleine Const., Inc. v. Directional Rd. Boring, Inc.,*
   438 F.Supp.2d 696 (E.D. Tex. 2006)................................................... 20

*Taylor v. State,*
   450 S.W.3d 528 (Tex. Crim. App. 2014) ................................... 1, 7, 20

*Teachers Credit Union v. Hernandez,*
   814 S.W.2d 195 (Tex. App. –San Antonio 1991, no writ) ................. 23

*Texas Brand Bank v. Luna & Luna, LP*
   2015 WL 12916411 (N.D. Tex. Feb. 27, 2015)................................... 26

*TIB--The Indep. Bankers Bank v. Canyon Cmty. Bank,*
   13 F. Supp. 3d 661 (N.D. Tex. 2014) ................................................. 21

*U.S. v. Anderson,*
   174 F.3d 515 (5th Cir. 1999) ............................................................. 12

*U.S. v. Hanafy,*
   124 F. Supp. 2d 1016 (N.D. Tex. 2000) ............................................ 12

*U.S. v. Pendleton,*
   761 Fed. Appx. 339 (5th Cir. 2019).................................................... 10

*U.S. v. Phillip Morris USA,*
   316 F. Supp. 2d 19 (D.D.C. 2004) ..................................................... 19

*U.S. v. Saks,*
   964 F.2d 1514 (5th Cir. 1992) ............................................................. 9

*U.S. v. Thompson,*
   2001 WL 498430 (5th Cir. Apr. 9, 2001) ........................................... 14

*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*,
    63 F.3d 516 (7th Cir. 1995) ............................................................ 15

*United Healthcare Servs., Inc. v. Next Health, LLC*,
    2021 WL 764035 (N.D. Tex. Feb. 26, 2021).................................... 14

*United States v. Elliott*,
    571 F.2d 880 (5th Cir.1978) ..................................................... 17, 18

*United States v. Faulkner*,
    584 F. Supp. 3d 180 (N.D. Tex. 2022) .............................................. 9

*United States v. Hawes*,
    529 F.2d 472 (5th Cir.1976) ........................................................... 17

*United States v. Hively*,
    437 F.3d 752 (8th Cir. 2006) .......................................................... 14

*Wells Fargo Bank, N.A. v. Sutherland*,
    2017 WL 7052266 (W.D. Tex. Nov. 28, 2017)................................ 23

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ........................................................ 6, 12

*Xie Law Offices, LLC v. Nguyen & Chen, LLP*,
    2018 WL 3468718 (S.D. Tex. June 28, 2018)................................. 29

**STATUTES**

18 U.S.C. § 1344.................................................................................. i, 9

18 U.S.C. § 1956............................................................................... i, 10

18 U.S.C. § 1961............................................................................ i, 6, 7

18 U.S.C. § 1961(3) ............................................................................. 6

18 U.S.C. § 1961(4) ........................................................................... 17

18 U.S.C. § 1962(a)-(d) ....................................................................... 6

18 U.S.C. § 1965(b) ........................................................................... 30

28 U.S.C. § 1344.................................................................................. 9

Tex. Bus. & Com. Code § 4A.202...................................................... 26

Tex. Penal Code § 31.03(b)(1)............................................................ 21

**RULES**

Fed. R. Civ. P. 12(b)(7).................................................................. 27, 28

Fed. R. Civ. P. 15(c) .......................................................................... 29

Fed. R. Civ. P. 19(a) .......................................................................... 28

Fed. R. Civ. P. 19(b) .......................................................................... 28

Plaintiff FedEx Supply Chain Logistics & Electronics, Inc. ("Plaintiff" or "FSCLE") for its Omnibus Response in Opposition to Motions to Dismiss [Dkt. #s 104, 107, 110, 111 and 115] states as follows:

## INTRODUCTION & SUMMARY OF ARGUMENT

Defendants' Motions to Dismiss are thinly veiled attempts to argue the merits of this dispute and fail because they ignore the actual (and very) detailed facts pled in the Second Amended Complaint ("SAC"). Defendants' motions are thus procedurally improper at this stage of the case as the Court must accept the facts as pled by FSCLE. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *E. Poultry Distribs., Inc. v. Puez*, No. 3:00-CV-1578-M, 2001 U.S. Dist. LEXIS 27007, at *3-4 (N.D. Tex. Dec. 3, 2001) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The actual facts pled show that Defendants stole tens of millions from FSCLE by sending FSCLE more than 1,600 invoices, on and after November 3, 2021, with no intention by the Defendants to perform the services associated with those invoices and/or the related reversing transactions in which all but a small percentage of the money paid by FSCLE would be paid back to FSCLE. SAC at ¶¶ 10, 23, 89, 118, 120, 121, 159, 160-192 & 217; *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014) (holding that theft under the Texas Civil Liability Theft Act may be shown where there is a contract between the victim and the accused if "at the time that money is exchanged pursuant to the contract, the accused either intends not to, or at least knows he will not, perform his part of the bargain."); *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016) (same). This scheme continued after Goodman Networks was internally declared to be defunct with the Defendants sending another 624 invoices to FSCLE after November 23, 2021. SAC at ¶¶ 24, 138, 140, 159, 217 & 193-215. There is no serious dispute

1

that the funds paid by FSCLE when it received these invoices were owned by FSCLE. Defendant

Frinzi even referred to the money held in the 4352 account at Prosperity Bank as "FedEx money",

"FedEx trust funds" and the "FedEx account with Prosperity." SAC at ¶¶ 136 & 143. Various

Defendants and employees of the Defendants affirmatively mislead FSCLE as to the reasons the

reversing transactions (payments back to FSCLE) were not happening but they all profited from

the scheme. SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158.

For example, in November and December 2021, Defendants James Goodman, Jim Frinzi

and Shalom Auerbach met, spoke by phone or texted between Texas and New York discussing the

"path forward" which included the plan to FSCLE's money out of the 4352 account at Prosperity

Bank (the account holding the stolen FSCLE money). SAC at ¶¶ 126, 128 & 300-304. With the

exception of some of the individual defendants who knowingly took stolen FSCLE funds,[1] all of

the other Defendants, whether corporate entities or persons, are connected with or owned by James

Goodman, Frinzi or Shalom Auerbach and were used to launder the stolen funds, used to receive

the stolen funds or to perpetrate bankruptcy fraud.[2] Zakharyayev is an attorney for one or more of

the Auerbachs and Pinkhasova is his wife. SAC at ¶¶ 315, 350 & 352. Zakharyayev and/or

Pinkhasova were the front people allegedly behind the 18920 NW scheme even though in

---

[1] Defendant Jake Goodman was paid $200,000 in "severance" from Goodman Networks but performed no services, the funds paid to him were stolen FSCLE funds and he knew or should have known of the source of those funds. SAC at ¶¶ 396-404. Similarly, Defendants Jonathan, Jason and Jody Goodman received payments of stolen FSCLE funds under circumstances that either caused them to know or they should have known of the source of the funds. SAC at ¶¶ 390-392 and 405-406.

[2] For example, Unified Field Services was utilized to further bankruptcy fraud to conceal the nature of the overall theft of property and laundering of money. SAC at ¶¶ 435-440. Auerbach Partners, the Auerbach Trusts and AMRR received stolen FSCLE funds to help launder them. SAC at ¶¶ 299, 321 and 379.

substance the funds were flowing back to James Goodman, Frinzi and/or one or more of the Auerbachs. SAC at ¶¶ 337-379.

Prosperity Bank played a unique and direct role in the overall enterprise to steal and launder FSCLE's funds. The point person between Prosperity Bank and James Goodman/Frinzi was Bater Bates, a Prosperity employee. SAC at ¶ 90. In October 2021, James Goodman met with Bates and told him of the plan to strip the assets out of Goodman Networks and Genesis. *Id.* James Goodman had to enlist Bates and Prosperity Bank in his plan because Prosperity Bank had numerous Goodman Networks and Genesis assets pledged as collateral for loans. SAC at ¶ 92.

During those discussions about switching collateral to cover existing loans and thus freeing other assets to be stripped out, James Goodman and Bates discussed the 4352 account which housed the FSCLE funds. *Id.* Both James Goodman and Bates knew that the 4352 account held FSCLE's money because it was established exclusively to receive FSCLE payments prior to most of that money being sent back to FSCLE in the reversing transactions. SAC at ¶¶ 7, 80 & 93. Despite knowing that the funds in the 4352 account belonged to FSCLE, Prosperity Bank allowed the 4352 account to be substituted as collateral for loans to allow James Goodman and those working with him to strip the assets out of Goodman Networks and/or Genesis and did so on documents that Bates knew were not validly signed or authorized. SAC at ¶¶ 109 & 111.

In order to launder the stolen FSCLE funds out of the 4352 account, James Goodman and Frinzi needed Frinzi to obtain control over the 4352 account. Thus, in October, November and December 2021, James Goodman and Frinzi repeatedly demanded that Prosperity Bank make Frinzi the signor on the 4352 account. SAC at ¶¶ 103-105, 226-227, 235-236 & 244-245. Prosperity Bank responded to those demands by asking for valid corporate resolutions from Goodman Networks authorizing Frinzi to be the signor on the 4352 account. SAC at ¶¶ 228-230

& 234.  Frinzi first sent Prosperity Bank unsigned documents allegedly authorizing the change in control and later sent falsified documents with signatures.  SAC at ¶¶ 226-227 & 245.  Prosperity Bank had actual knowledge that it took three directors at Goodman Networks to authorize a change in control of any bank account and that after October 22, 2021, Goodman Networks had only one director.  SAC at ¶¶ 82-84 & 98-99.  Thus, Prosperity Bank knew that Goodman Networks could not validly authorize a change in control of the 4352 account and yet worked with James Goodman and Frinzi to accomplish that change in control anyway.  SAC at ¶¶ 101, 106, 225, 232 & 240-245.  Prosperity Bank also knew that Goodman Networks was in winddown.  SAC at ¶ 232.

Despite Prosperity Bank's actual knowledge of the lack of authority to change control over the 4352 account and its knowledge of the Goodman Networks winddown, Prosperity Bank gave Frinzi control over the 4352 account.  SAC at ¶ 243.  Prosperity Bank then allowed Frinzi and those working with him to add outgoing wire capability to the 4352 account.  SAC at ¶¶ 132-134.  Prosperity Bank even increased the daily limit on the amount of funds being wired out of the account to help facilitate a faster transfer of funds.  SAC at ¶ 254.  In fact, that decision to increase the daily limit on wire transfers came from the "top of the house" at Prosperity Bank.  *Id.*  Prosperity Bank further allowed Frinzi and those working with him to use the login credentials of Goodman Networks' employees that Prosperity Bank knew no longer worked for Goodman Networks to make transfers out of the 4352 account.  SAC at ¶¶ 250-251.  Some of the funds from the 4352 account were used to pay off loans at Prosperity Bank.  SAC at ¶ 252.

Having first stolen funds from FSCLE through the use of fraudulent invoices (sent by interstate wire) that Goodman Networks had no intention to perform and then having obtained control over the 4352 account, James Goodman, Frinzi and Shalom Auerbach then engaged in one or more schemes to launder the stolen FSCLE funds.  Those schemes include:

4

(1) The AMRR-Multiband Scheme (SAC at ¶¶ 256-298) (January 2021 – September 2023) in which $44 million in stolen FSCLE funds were "loaned" by GNET to AMRR. The actual funds came from the 4352 account. Portions of the $44 million in stolen FSCLE funds were used to purchase various businesses and assets which were later sold. The proceeds of these sales went to James Goodman, Frinzi, Shalom Auerbach and entities controlled by them.

(2) The Auerbach/Alliance/Hudson Scheme[3] (SAC at ¶¶ 300-336) (December 2021 – February 2022) in which worthless or near worthless bonds James Goodman held in Goodman Networks were "sold" to Hudson Clean Energy (an entity owned and controlled by the Auerbachs) for $32 million. The funds paid to James Goodman for those bonds were stolen FSCLE funds from the 4352 account. The Auerbachs, Zakharyayev and Pinkasova all received a cut of the stolen funds in exchange for facilitating the fraudulent bond purchase.

(3) The 18920 NW Scheme (SAC at ¶¶ 337-379) (January 2021 – September 2022) in which James Goodman "sold" worthless or near worthless stock in Goodman Networks to 18920 NW, an entity controlled by Zakharyayev and Pinkasova, for $12 million. The funds to pay for the purchase of the stock came from stolen FSCLE funds in the 4352 account. 18920 NW and Zakharyayev were fronts for the Auerbachs. Each took a cut of the "purchase price" to facilitate the transaction.

(4) Bankruptcy Fraud (SAC at ¶¶ 430 – 478) (August 2022 – January 2023) in which John Goodman, Jonathan Goodman, Jody Goodman and Frinzi took actions to frustrate the

---

[3] Judith Auerbach is sued only in her capacity as Trustee of the Auerbach Childrens' and Auerbach Family Trusts. SAC at ¶ 38. The Trusts received stolen FSCLE funds in exchange for helping launder the funds. SAC at ¶ 289.

bankruptcy process to hide their actions or the actions of others like James Goodman and demanded payments that they were not entitled to obtain. The source of the payments during this period were the stolen FSCLE funds originally held in the 4352 account.

The Defendants worked in an enterprise to steal more than sixty-seven million ($67 million) from FSCLE and then laundered those funds through a series of transactions back to themselves. FSCLE has set forth a prima facie claim for each of its causes of action in its 185-page SAC requiring denial of Defendants' motions.

## LAW AND ARGUMENT

**I.    FSCLE More Than Adequately Pled its RICO Claims.**

FSCLE brings claims against the Defendants under 18 U.S.C. § 1962(a)-(d). To state a plausible RICO claim, FSCLE alleged facts showing: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise" *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir.1993). A RICO "person" may be "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000). "Racketeering activity" includes certain state and federal offenses enumerated in § 1961(1), including mail or wire fraud. *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229, 239 (1989). All of these things have been plead in the SAC.

**A.    FSCLE Has Pled a Pattern of Racketeering Activity.**

To satisfy the second RICO element a plaintiff must allege a "pattern" of such acts. *In re Burzynski,* 989 F.2d at 742. " 'Racketeering activity' consists of two or more predicate offenses, defined by the statute to include acts violating federal wire or mail fraud statutes." *Word of Faith World Outreach Center Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir. 1996) (quoting 18

6

U.S.C. § 1961). This two-pronged element "requires the plaintiff to plead both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity." *In re Burzynski,* 989 F.2d at 742 (quoting *H.J. Inc.,* 492 U.S. at 239). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc.,* 492 U.S. at 239.

    (1)    **Predicate Acts of Theft – 18 U.S.C. § 1961**

    In its SAC, FSCLE alleges that James Goodman, Frinzi, Shalom Auerbach and the various entities and persons controlled by them first agreed to steal funds from FSCLE by having Goodman Networks send invoices to FSCLE, that it had no intention to perform, and at a time when Goodman Networks was shutting down and after Goodman Networks was defunct.  SAC at ¶¶ 10, 23, 24, 89, 118, 120, 121, 138, 140, 159, 160-215 & 217.  James Goodman and Frinzi even caused false stories to be presented to FSCLE as to why the reversing transactions (cash back to FSCLE) were not happening.  SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158.

    One or more of the Defendants argue that this fails to constitute a RICO violation or that FSCLE has no standing[4] because, they say, the funds ceased to be FSCLE dollars once transferred to the 4352 account and thus could not be stolen.  This argument fails for several reasons.  First, the RICO theft was the procurement of the funds from FSCLE in the first place.  Payments obtained pursuant to a contractual relationship are considered stolen if the party procuring the payments has no present intention to perform the contract on the day the invoices are sent.  *See Taylor v. State,*

---

[4] These standing arguments were originally made before Bankruptcy Judge Larson in the Goodman Networks chapter 7 bankruptcy.  Defendants argued in that case that FSCLE lacked standing to assert the claims in this case because those claims allegedly belonged to the bankruptcy estate.  In the context of ruling that FSCLE had not violated the automatic stay, Judge Larson held on March 29, 2024 that the claims asserted by FSCLE in this case belong to FSCLE and are not property of Goodman Networks or its bankruptcy estate.  *In re: Goodman Networks, Inc.,* Case No. 22-31641 (Bkrtcy. N.D. Tex.) [Dkt.# 526, pg. 8 and 9 of 16].  Thus, Defendants standing arguments have already been evaluated and rejected.

450 S.W.3d 528, 536 (Tex. Crim. App. 2014); and *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016). Here, FSCLE has pled that the contract between it and Goodman Networks required the reversing transactions by which nearly all of the funds were to be paid back to FSCLE. SAC at ¶¶ 3-9, 23, 60-64 & 89. Thus, most of the money paid by FSCLE would go back to FSCLE. On and after November 3, 2021, Frinzi ordered that no further funds would be paid to FSCLE while instructing invoices continue to go to FSCLE to prompt payment from FSCLE. SAC at ¶¶ 118-121 & 141. James Goodman supported this course of theft. SAC at ¶¶ 123-128. Thus, the theft occurred when payments were obtained from FSCLE under false pretenses. The later movement of the cash out of the 4352 account at Prosperity Bank was part of the money laundering – not the original theft.

Second, pursuant to Texas law, "[t]he general rule is that when property is stolen, the party who acquires the stolen property does not acquire its title." *Matter of Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020) (*citing Matter of Approximately $80,600.00*, 537 S.W.3d 207, 211 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)); *A. Benjamini, Inc. v. Dickson*, 2 S.W.3d 611, 613-614 (Tex. App.—Houston [14th Dist.] 1999, no pet.). This general rule applies equally to cash that is acquired in an unlawful manner. *Sinclair Houston Fed. Credit Union v. Hendricks*, 268 S.W.2d 290, 295 (Tex. Civ. App.—Galveston 1954, writ ref'd n.r.e.). Thus, while FSCLE's cash was possessed or controlled by Goodman Networks in the 4352 account, FSCLE still retained legal or beneficial title to that cash. Frinzi even referred to the cash in the 4352 account as "FedEx money," "FedEx trust funds" and the 4352 account as the "FedEx account." SAC at ¶ 136 & 143.

(2)     **Predicate Acts of Mail/Wire Fraud – 18 U.S.C. §§ 1341/1343**

Here the pattern of criminal activity started as the theft using the invoices with no intent to perform the reversing transactions. Each of those invoices was sent in interstate commerce between Texas, Pennsylvania and/or Tennessee. SAC at ¶¶ 159-215. Each invoice thus

8

constituted a separate act of wire and/or mail fraud depending on the mode of transit of each invoice. FSCLE has specifically pled these acts of mail and wire fraud. Indeed, to properly plead mail/wire fraud, a RICO plaintiff must plead: (1) a scheme to defraud by means of false or fraudulent misrepresentations, (2) the interstate use of mail/wires; (3) use of the mail/wire to carry out the scheme; and (4) actual injury. *Landry v. Airline Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 428 (5th Cir. 1990); *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 649 (S.D. Tex. 2007) aff'd 332 Fed. App'x 397 (5th Cir. 2009). The defendant charged with the mail/wire fraud need not have personally sent the article in the mail or via electronic means but rather had to have caused the communication to be sent or knew the use of mail/wires would follow in the ordinary course of business or could reasonably be foreseen. *United States v. Faulkner*, 584 F.Supp.3d 180, 189 (N.D. Tex. 2022); *D'a Petro., LLC v. Buster*, No. 3:19-cv-02770-M, 2020 U.S. Dist. LEXIS 262937, at *12 (N.D. Tex. Aug. 17, 2020). Further the actual invoice or communication does not itself have to be fraudulent; rather the communication must be sufficiently closely related to the fraudulent scheme. *Id.* at 190. Here, the Defendants sent FSCLE dozens of invoices for more than 2,235 transactions worth millions over a period of months all with absolutely no intent to perform those invoices. SAC at ¶¶ 159-215. And they knew or should have foreseen that mail or wires would be used to accomplish the scheme.

(3)  **Predicate Acts of Bank Fraud – 18 U.S.C. § 1344**

It was not enough to simply steal the funds from FSCLE. Defendants needed to get FSCLE's money out of the 4352 account. To do so, they committed bank fraud colluding with Prosperity Bank to do so. In order to plead bank fraud, a RICO plaintiff must show that a Defendant obtained money, funds, credit, assets, securities or other property owned by or under the custody and control of a financial institution by means of false or fraudulent representations or promises. 28 U.S.C. § 1344; *U.S. v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992). Bank fraud may

9

be shown even where the third party colludes with bank officers to achieve the fraud. *Id.* Here, FSCLE has pled that Frinzi and James Goodman worked together with agents of Prosperity Bank to gain access to the 4352 account. SAC at ¶¶ 103-105, 226-227, 235-236 & 244-245. Frinzi and James Goodman presented false corporate documents to Prosperity Bank to accomplish the change in control. SAC at ¶¶ 226-227 & 245. Agents and employees of Prosperity Bank knew the documents presented were false and gave Frinzi control over the 4352 account anyway. SAC at ¶¶ 101, 106, 225, 232 & 240-245. Prosperity Bank even raised the daily limit on the amount of wires that could be sent out. SAC at ¶ 254. Having fraudulently obtained control over the 4352 account, the Defendants moved millions of stolen FSCLE funds out of the 4352 account to fund their money laundering schemes.

    (4)    **Predicate Acts of Money Laundering – 18 U.S.C. § 1956**

In order to plead a plausible claim for money laundering, FSCLE must set forth factual allegations showing that one or more of the Defendants: (1) conducted or attempted to conduct a financial transaction; (2) which the defendant knew involved the proceeds of an unlawful activity; (3) with the intent to design the transaction to conceal or disguise the nature, location source or control of the proceeds of the unlawful activity. *U.S. v. Pendleton*, 761 Fed. Appx. 339, 346 (5th Cir. 2019). Only one purpose of the transaction needs to be to disguise the source or nature of the funds. *See Regalado Cuellar v. United States,* 553 U.S. 550, 568 (2008).

Here, FSCLE has pled ample allegations of money laundering in several different schemes involving James Goodman, John Goodman, Frinzi, Shalom Auerbach and those persons and entities associated with them. This includes the AMRR-Multiband Scheme (SAC at ¶¶ 256-298), the Auerbach/Alliance/Hudson Scheme (SAC at ¶¶ 300-336) and the 18920 NW Scheme. SAC at ¶¶ 337-379. The nature of the efforts to disguise the nature of the transactions and the source of the funds is pled in detail. For example, Hudson, Auerbach Partners, Neil Auerbach and Shalom

Auerbach kept two sets of fund flows in at least one of these transactions with one showing the funds flowing back to James Goodman and another that showed only the partial flow of funds between Alliance and James Goodman's entities, which was formalized into a Funds Flow Memorandum and fraudulently concealed Goodman Networks and the 4352 Account as the source of funds for the bond purchase. SAC at ¶ 322. The Auerbachs had Zakharyayev and 18920 NW be the nominal "purchaser" of bonds even though it was really the Auerbachs using stolen FSCLE funds. SAC at ¶ 357-358. James Goodman texted Frinzi on March 1, 2022 saying, "Steven [Zakharyayev] is trying to get me sell at $3.00 . . . tell him $3.50. **He will get his money back and then some . . .**" SAC at ¶ 360(emphasis added). As further evidence that the transactions were designed to hide the true nature of the transactions, Frinzi also texted James Goodman saying, "I have a plan to get most money back to you, **without exposing you are the beneficiary . . .**" SAC at ¶ 348 (emphasis added).

In each of these schemes, the source of the funds for the deals was FSCLE's money in the 4352 account. SAC at ¶¶ 268, 290, 296, 330 & 357. In each case, the participants in the transactions knew the source of the funds for the transactions came from FSCLE. SAC at ¶¶ 272, 285, 291, 299, 329, 335-336, 367, 372 & 374. And, in each case, the transactions resulted in the funds flowing back to one or more of the Defendants including James Goodman, John Goodman, Jason Goodman, Jonathan Goodman, Jody Goodman, Frinzi, Neil Auerbach, Shalom Auerbach, Steven Zakharyayev, Evalina Pinkasova and the entities controlled by them. SAC at ¶¶ 278, 280-283, 289, 295, 299, 374 & 379.

(5)   **Predicate Acts of Sending/Receiving Stolen Funds – 18 U.S.C. §§ 2314/2315**

To set forth a plausible claim of sending and receiving stolen money, a RICO plaintiff must set forth facts showing: (1) defendants sent or received stolen money in interstate commerce, (2) defendants knew money was stolen, and (3) the value of goods or money exceeded $5,000. *U.S.*

11

*v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999); *U.S. v. Hanafy*, 124 F.Supp.2d 1016, 1019 (N.D. Tex. 2000). Here, FSCLE pleads that its stolen funds went from either Pennsylvania or Tennessee to Texas. SAC at ¶ 6 and 579. Those stolen funds were also moved to accounts in California, Rhode Island, North Carolina, New York, Georgia and/or Florida before going back to Texas. SAC at ¶¶ 274, 472, 583 & 585. The individuals who received those funds, including Jake Goodman, knew them to have originated with FSCLE. SAC at ¶¶ 272, 285, 291, 299, 329, 335-336, 367, 372, 374, 381-385, 391-392, 394, 404-404 & 409. The amounts at issue all significantly exceeded $5,000. For example, Jake Goodman was paid $200,000. SAC at ¶ 403.

Predicate acts are related where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." *Word of Faith*, 90 F.3d at 122. All of these predicate acts are connected in their overall purpose: getting stolen FSCLE funds to the Defendants. They started with the theft of the FSCLE funds. Then they moved to bank fraud to fraudulently gain control of the 4352 account and to money laundering and sending and receiving stolen property.

(6)     **FSCLE Has Pled Sufficient Continuity.**

For a series of related predicate acts to constitute a RICO "pattern of activity," a RICO plaintiff must also allege that the conduct was sufficiently continuous. "It is 'continuity' that assures a federal cause of action." *In re Burzynski*, 989 F.2d at 742. Continuity may be alleged as "either a closed period of repeated conduct, or an open-ended period of conduct that, 'by its nature projects into the future with a threat of repetition.' " *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 240). A closed period of conduct may be properly pleaded by alleging "a series of related predicates extending over a substantial period of time." *Id.* (citing *H.J. Inc.*, 492 U.S. at 241). An open period of conduct requires allegations of "a specific threat of repetition extending

12

indefinitely into the future," or that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.*

Here, FSCLE has pled specific facts of both an open-ended threat and a closed period that lasted nearly two years. The open-ended threat is pled as the continuing effort to further launder the stolen FSCLE funds. SAC at ¶ 28. Whether an open-ended pattern of continuity has been sufficiently pled turns on whether the predicate acts themselves pose a "*threat* of continuity." *H.J., Inc.,* 492 *U.S.* at 241. An open-ended pattern exists when the predicates "involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* at 242. As can be seen by the various money laundering schemes, the Defendants did not just flip the money once through one transaction. Rather, as in the example of the AMRR scheme, it involved further downstream transactions and business units being sold, resold and rebranded. SAC at ¶¶ 285, 287 & 292-299. That effort to launder the money and the business units themselves shows no end and continues as a threat. If FSCLE were to get close to recovering from one of the businesses, Defendants' conduct reflects they could, and likely would, wash the assets through further transactions.

Even if these predicate acts could be seen as a closed-ended threat, the length of the threat is sufficient to satisfy pleading requirements. The Fifth Circuit has "presumed that more than a year of racketeering acts constitute a 'substantial period of time'" sufficient to show RICO continuity. *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.,* 98 F.4th 198, 206 (5th Cir. 2024). Here, the pattern of racketeering behavior affecting FSCLE began no later than November 3, 2021 when Frinzi instructed employees of Goodman Networks to stop all further payments to FSCLE while still sending FSCLE fraudulent invoices. SAC at ¶10, 23 & 118. The AMRR/Multiband scheme lasted at least through September 2023. SAC at ¶¶ 279 & 298. That means even if the pattern was closed-ended, it lasted at least 23 months.

13

The Fifth Circuit recently reminded that "[b]ecause continuity depends on the specific facts of each situation, no one test can be fixed 'in advance with such clarity that it will always be apparent whether in a particular case a 'pattern of racketeering activity' exists.'" *D&T Partners,* 98 F.4th at 206 (quoting *H.J. Inc.,* 492 U.S. at 243). Thus, closed-ended continuity lasting twenty to twenty-four months has been found by the Fifth Circuit and district courts in Texas to be sufficiently long to satisfy RICO pleading standards. *See U.S. v. Thompson,* 2001 WL 498430, at *9 (5th Cir. Apr. 9, 2001)(twenty to twenty-one month period of continuity sufficient); *Abraham v. Singh,* 480 F.3d. 351, 356 (5th Cir. 2007) (twenty-four months sufficient); *Cypress/Spanish Ft. 1, L.P. v. Pro Serv. Indus., Inc.*, 814 F.Supp.2d 698, 714 (N.D. Tex. 2011)(approximately twenty-four months sufficient); *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035 at *11 (N.D. Tex. Feb. 26, 2021) (twenty-four months sufficient); *DHI Group, Inc. v. Kent*, 397 F. Supp. 3d 904, 926 (S.D. Tex. 2019)(twenty-two months sufficient); and *Hewlett-Packard Co. v. Byd:Sign, Inc.*, 2007 WL 275476, at *5 (E.D. Tex. Jan. 25, 2007)(twenty-two months sufficient).

Other jurisdictions have found continuity at even shorter periods of time. See *First Nat'l Bank & Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1304 (8th Cir. 1991)(fifteen months sufficient); *United States v. Hively*, 437 F.3d 752, 762 (8th Cir. 2006)(only twelve months required); *Resol. Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993)(eighteen months sufficient); and *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1304 (7th Cir. 1987)(seven months sufficient). The twenty-three month period of continuity pled by FSCLE satisfies the continuity requirement.

A number of the Defendants cite to and rely upon *D&T Partners*, 98 F.4th 198 (5th Cir. 2024) as support for their arguments while glossing over the unhelpful portions of *D&T*. Regardless, Defendants' outsized reliance on *D&T* is misplaced. The Fifth Circuit in *D&T* noted

14

that RICO cases are highly fact specific when it observed that "no one test can be fixed in advance with such clarity that it will always be apparent whether in a particular case a pattern of racketeering activity exists." *Id.* at 206.  When discussing continuity, the *D&T* court referenced the absence of multiple targeted victims as relevant as well as whether the racketeering conduct involved different schemes at different points in time. *Id.* at 206-207.  "This is because the idea of 'continuity' embraces 'predicate acts occurring at different points in time **or** involving different victims.'" *Id.* (emphasis added).  But, "[i]f numerous schemes are alleged, such allegations are 'highly relevant' to the continuity inquiry and tend to support such a finding." *Id.* at 207 (citing to *H.J. Inc.*, 492 U.S. at 240).  Thus, the continuity analysis is fact specific and multi-factor that looks at, among other things, the length of time, the number of victims and the number of schemes.

In *D&T*, the Fifth Circuit found that continuity had not been established where the scheme lasted four years because there was only one victim and one scheme. *Id.* at 208.  This stands in contrast to many other RICO cases where RICO claims involving a single victim have been allowed to proceed. *See, e.g.., Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 309 (2d Cir. 1997)(one victim, multiple schemes); *Liquid Air Corp.,* 834 F.2d at 1304 (one victim, multiple acts); *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 524 (7th Cir. 1995)(one victim, multiple schemes); *Cypress/Spanis,* 814 F. Supp. 2d at 714 (one victim, multiple schemes); *Com. Metals Co. v. Chazanow,* 2009 WL 3853704, at *7 (N.D. Tex. Nov. 17, 2009)(one victim, multiple schemes); *Hewlett-Packard Co. v. Byd:Sign, Inc.*, 2007 WL 275476 at *5 (E.D. Tex. Jan. 25, 2007)(one victim, multiple schemes).  Thus, the existence of a single victim is not determinative. *D&T* simply does not stand for the proposition that no RICO claim could be made by a single victim. That was only part of the Fifth Circuit's analysis tempered by its introductory

remark that the court has "been skeptical of RICO allegations when the victims of the alleged racketeering conduct are limited." *D&T Partners,* 98 F.4th 206.

Unlike the facts of *D&T,* the facts here show multiple schemes. The first scheme involved the use of the fraudulent invoices to steal FSCLE's funds and the lies to cover up the theft. The second scheme involved the effort to fraudulently obtain control over the 4352 account. Then, there were at least three distinct schemes to launder the stolen funds through various money laundering transactions, including the AMRR/Multiband Scheme, the Hudson/Auerbach Scheme and the 18920 NW Scheme. In *D&T* the sole purpose of the scheme was the transfer of funds from one company to another but here the stolen FSCLE funds ultimately went to a myriad of persons and companies including those who facilitated the money laundering. Unlike in *D&T,* the injury to FSCLE is not derivative[5] of injury to another person or entity.

Here, FSCLE has pled a period of continuity[6] that has been consistently held by courts in this Circuit and others to be sufficient to satisfy RICO. FSCLE has also pled multiple schemes involving injury of more than $67 million to FSCLE. This is a sufficiently pled pattern of RICO activity.

**B.    FSCLE Has Pled the Existence of An Enterprise.**

In addition to pleading a pattern of RICO activity, FSCLE hast plead the existence of an "enterprise." *See In re Burzynski,* 989 F.2d at 741–42. "Congress gave the term 'enterprise' a very

---

[5] Bankruptcy Judge Michelle Larson held on March 29, 2024 that the claims asserted by FSCLE in this case belong to FSCLE and are not property of Goodman Networks or its bankruptcy estate. *In re: Goodman Networks, Inc.,* Case No. 22-31641 (Bkrtcy, N.D. Tex.) [Dkt.# 526, pg. 8 and 9 of 16]. Therefore, FSCLE's claims are not derivative. They are direct claims.

[6] FSCLE's pled period of continuity is at least twenty-three months. FSCLE pled this period of continuity based on the documents and information available to it without the benefit of discovery. FSCLE suspects that the actual period will wind up being much longer because the facts of the dispute between non-party, Arris and many of the same Defendants look very familiar to the pattern of activity in this case. Moreover, Defendants actions with AT&T may also show a longer period. Only discovery will illuminate the full length of the RICO enterprise.

broad meaning." *United States v. Elliott,* 571 F.2d 880, 897 (5th Cir.1978) (quoting *United States v. Hawes* 529 F.2d 472, 479 (5th Cir.1976)). Under the statute, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "RICO enterprise can be either a legal entity or an association-in-fact." *St. Paul Mercury Ins. Co.,* 224 F.3d at 440. "If the alleged enterprise is an association-in-fact, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Id.* When an association-in-fact is asserted, the plaintiff must also show that the association-in-fact exists for purposes other than simply to commit the predicate acts. *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).

RICO does not require that an enterprise be a separate business-like entity. *Allstate Ins. Co. v. Michael Kent Plambeck, D.C.,* 2014 WL 1303000, at *3 (N.D. Tex. Mar. 31, 2014) (citing *Boyle v. United States,* 556 U.S. 938, 945 (2009)). An association-in-fact enterprise is simply a continuing unit that functions with a common purpose and course of conduct. *Boyle,* 556 U.S. at 950. Although each member of the enterprise must also share this common purpose, *Michael Kent Plambeck,* 2014 WL 1303000, at *3, the enterprise concept is broad. *Boyle,* 556 U.S. at 949. An association need not have a "hierarchical structure," a "chain of command," or any formalized procedures. *Id.* at 948. Decisions may be made on an ad hoc basis and members need not have fixed roles. *Id.* Thus, alleging that association-in-fact members actively associate with one another and work cooperatively and illegally to achieve a goal is sufficient to establish plausible enterprise status. *Adhikari v. Daoud & Partners,* 697 F.Supp.2d 674, 692 (S.D.Tex.2009). Interdependent and coordinated associations that exist to perpetuate the enterprise and its profitability likewise satisfy the common-purpose structural element. *Michael Kent Plambeck,* 2014 WL 1303000, at

*3; *see also United States v. Elliott*, 571 F.2d 880, 898 (5th Cir.1978) (noting that a shared "desire to make money" is sufficient to satisfy RICO's common-purpose requirement). Although a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise. *St. Paul*, 224 F.3d at 447.

Here, FSCLE has pled an association in fact enterprise with James Goodman, Frinzi, Shalom Auerbach and John Goodman at the top. James Goodman and Frinzi made the decision to stop payments to FSCLE but continued to send fraudulent invoices while directing Goodman Networks' employees to lie to FSCLE about why the reversing transactions were not happening. SAC at ¶¶ 10, 23 & 118. Frinzi and James Goodman communicated and coordinated about the plan to then move FSCLE's money out of the 4352 account and to them. SAC at ¶¶ 301-304. Frinzi and Shalom Auerbach spoke by phone and texts no later than December 9, 2021 about the "path forward" to get as much cash out of Goodman Networks as possible. SAC at ¶ 300. Frinzi, James Goodman and Shalom Auerbach worked together to coordinate the fraudulent bond sale. SAC at ¶ 307. Frinzi and James Goodman coordinated on the fraudulent effort to obtain control of the 4352 account. SAC at ¶¶ 223-255. Auerbach was so involved in the planning and coordination of the enterprise that he caused two versions of a funds flow memo to be created. SAC at ¶ 322. Auerbach directed that the fraudulent scheme to buy James Goodman's worthless stock in Goodman Networks (using FSCLE's funds) occur in the name of Zakharyayev, Pinkasova and/or their entity 18920 NW, LLC. SAC at ¶ 358. John Goodman began to exert control and direction over the association in fact in May 2022 when he took efforts to retake control of Goodman Networks. SAC at ¶ 442. John Goodman with James Goodman directed that Frinzi resign as CEO of Goodman Networks. SAC at ¶ 447. This allowed John Goodman to then direct that fraudulent bankruptcy schedules and statements be filed to conceal certain transactions that

18

benefited him.  SAC at ¶ 451.  John Goodman further directed that Goodman Networks file false documents in the bankruptcy case to deny any liability to FSCLE knowing that at least $67 million in FSCLE funds were stolen and laundered to his brother and others.  SAC at ¶ 459.

This association in fact did not exist solely to carry out the RICO enterprise.  John Goodman had been the owner and controlling shareholder of Goodman Networks and James Goodman's brother.  SAC at ¶ 73.  James Goodman controlled Goodman Networks for a significant period of time.  SAC at ¶ 77.  Jason Goodman, Jody Goodman and James Goodman were, at various times, members of the board of Goodman Networks.  SAC at ¶ 98.  Frinzi served as the CEO of Goodman Networks and AMRR.  SAC at ¶¶ 264-265.  Shalom Auerbach served on the board of AMRR with Frinzi.  SAC at ¶ 266.  Zakharyayev was an attorney for the Auerbachs. SAC at ¶¶ 315 and 350.  Thus, there was a connection between the various members of the enterprise separate and apart from the purpose of the enterprise itself.  FSCLE has set forth an enterprise for purposes of evaluating a RICO complaint at the motion to dismiss stage.

### C.  Joint and Several Liability of the Members of the Enterprise.

All who participate in a RICO enterprise are liable for all of the damage caused by the enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993).  That includes "lower rung participants in the enterprise who are under the direction of upper management."  *Id.*  "Every circuit in the country that has addressed the issue has concluded that the nature of both the civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations."  *Cartwright v. Ghattas*, 2010 WL 11506415 at *4 n.6 (W.D. Tex. March 16, 2010)(citing *U.S. v. Phillip Morris USA*, 316 F.Supp.2d 19, 27 (D.D.C. 2004)(collecting cases)).Thus, each of the Defendants in this case faces liability for the whole of the damage caused and not just their particular part in the enterprise.

19

II.    **FSCLE Adequately Pled its Claims Under the Texas Theft Liability Act and Common Law Theft.**

Most of the Defendants make the erroneous argument that there can be no claim under the Texas Theft Liability Act or common law for theft when the payments from FSCLE were made pursuant to the contract between FSCLE and Goodman Networks.  As set forth in *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014) and *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016), one is liable for theft even where there is a contract if, at the time the contractual payment is sought from the other contracting party, the party seeking payment has no intent to perform the contract.  That is exactly what FSCLE pled in this case.  Goodman Networks stopped any intent to perform but continued to send invoices to FSCLE for the express purpose of taking funds from FSCLE.  SAC at ¶¶ 10, 23, 24, 89, 118, 120, 121, 138, 140, 159, 160-215 & 217.  James Goodman and Frinzi even caused false stories to be presented to FSCLE as to why the reversing transactions (cash back to FSCLE) were not happening.  SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158.  They continued this course of conduct even when employees at Goodman Networks asked for permission to perform the contract and send payments back to FSCLE and expressed discomfort in the direction from Frinzi and James Goodman.  SAC at ¶¶ 125 & 129.  This is classic theft by contract as set forth in *Taylor* and *AAB Logistics*.

Further, FSCLE has pled that it and Goodman Networks agreed that all but .02% of the funds paid by FSCLE to Goodman Networks would flow back to FSCLE.  SAC at ¶¶ 4-6.  In fact, that is exactly what happened month after month until November 2021 when Frinzi, James Goodman and others acted to interrupt the automated process of funds flow to steal the funds from FSCLE.  SAC at ¶¶ 9-10.  Defendant Frinzi even referred to the money held in the 4352 account at Prosperity Bank as "FedEx money", "FedEx trust funds" and the "FedEx account with Prosperity."  SAC at ¶¶ 136 & 143.  Thus, under *Taylor Pipleine Const., Inc. v. Directional Rd.*

*Boring, Inc.*, 438 F.Supp.2d 696, 707 (E.D. Tex. 2006), the taking of the FSCLE funds held in the 4352 account also constitutes theft because the FSCLE funds were segregated and by agreement and practice all but .02% of the funds held in that account belonged to and were routinely paid back to FSCLE.

Importantly, FSCLE was not required to plead that each defendant directly stole FSCLE's funds. Rather, any party who received stolen property is liable for the original theft even if the theft was performed by another if they knew that the property was stolen. *See* TEX. PENAL CODE § 31.03(b)(1); *Compass Bank v. Villarreal*, 2011 WL 1740270, at *14 (S.D. Tex. May 5, 2011). Thus, arguments that various Goodman brothers and children did not directly steal the FSCLE funds but later received them fall flat. FSCLE has pled in each case that the Goodman family members knew the funds they received were stolen FSCLE funds. See e.g. SAC at ¶¶ 404 (Jake Goodman knew the funds he received were stolen) & 409. Similarly, the Auerbachs knew the original source of the funds came from fraud/theft. SAC at ¶¶ 329-336. Additionally, Prosperity Bank received some of the stolen FSCLE funds and knew the source of those funds. SAC at ¶¶ 225-233 & 252-254.

**III.    FSCLE Adequately Pled its Unjust Enrichment Claim.**

Unjust enrichment encompasses a number of equitable doctrines designed to prevent a party from retaining benefits conferred by another without compensation. *Compass Bank*, 2011 WL 1740270 at *10. When one party has been unjustly enriched by receiving money that in equity and good conscience belongs to another, the latter may bring an unjust enrichment claim[7] for

---

[7] While there exists a contract between FSCLE and Goodman Networks that FSCLE contends requires the reversing transactions to occur, various Defendants have disputed that the contract requires a reversing transaction. Where there is a dispute as to what the contract does or does not require, an unjust enrichment claim may be pled in the alternative. *TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014).

"money had and received." *See Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687–88 (Tex.1951); *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex. App.—El Paso, 1997, no writ) ("A cause of action for money had and received belongs conceptually to the doctrine of unjust enrichment."); *Burlington Northern R.R. Co. v. Southwestern Elec. Power Co.,* 925 S.W.2d 92, 101 n. 5 (Tex. App.—Texarkana 1996, no writ). To recover, the plaintiff need only show that the defendant holds money which in equity and good conscience belongs to the plaintiff. *Staats,* 243 S.W.2d at 687–88; *see Doss v. Homecoming Financial Network, Inc.,* 210 S.W.3d 706, 711 (Tex. App.—Corpus Christi 2006, pet. denied) ("A cause of action for money had and received is not based on wrongdoing, but, instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" (quoting *Amoco Prod.,* 946 S.W.2d at 164)); *Hunt v. Baldwin,* 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (same). Here, FSCLE has pled more than sufficient factual allegations to support its unjust enrichment claim against all Defendants.

**IV.    FSCLE Adequately Pled its Fraud Claims.**

To set forth a valid claim for fraud, a plaintiff show: (1) that a material misrepresentation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false, (4) intent to cause the other party to act upon the representation, (5) reasonable reliance and (6) damages. FSCLE has pled each of these elements. Among the material misrepresentations were the invoices sent to FSCLE on and after November 3, 2021 when Goodman Networks no longer had any intent to perform. SAC at ¶¶ 10, 23, 89, 118, 120, 121, 159, 160-192 & 217. Each invoice came with the representation that the reversing transaction sending all but .02% of the funds back to FSCLE would occur. SAC at ¶¶ 768-769. The misrepresentations continued even after Goodman Networks declared that it was defunct. SAC at ¶¶ 24, 138, 140, 159, 217, 193-215 & 769. Various Defendants and employees of the Defendants

22

affirmatively mislead FSCLE as to the reasons the reversing transactions (payments back to FSCLE) were not happening. SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158. The false explanations given to FSCLE seemed reasonable because there had been a previous delay in the reversing transactions that was corrected. SAC at ¶¶ 762-766. The sending of fraudulent invoices has been found to constitute actionable fraud. See e.g. *Wells Fargo Bank, N.A. v. Sutherland*, 2017 WL 7052266, at *2 (W.D. Tex. Nov. 28, 2017).

Those who receive the benefits of fraud are liable even if they did not themselves commit the fraud if they know that the source of the funds received came from fraud. See *Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198-99 (Tex. App. –San Antonio 1991, no writ). FSCLE has pled in each case that the various Goodman family member knew that the funds received by them were stolen FSCLE funds. *See e.g.* SAC at ¶¶ 404 (Jake Goodman knew the funds he received were stolen) and 409. Similarly, the Auerbachs knew the original source of the funds came from fraud/theft. SAC at ¶¶ 329-336. Additionally, Prosperity Bank received some of the stolen FSCLE funds and knew the source of those funds. SAC at ¶¶ 225-233 & 252-254.

**V.     FSCLE Adequately Pled its Tortious Interference Claim.**

To properly plead a claim for tortious interference, a plaintiff must show: (1) the existence of an enforceable contract subject to interference, (2) the defendant willfully and intentionally interfered with the contract; (3) that the interference caused the injury, and (4) actual injury. *Cmty. Health Sys. Pro. Sers. Corp. v. Hansen*, 525 S.W. 3d 671, 689 (Tex. 2017). FSCLE has pled each of these elements. The enforceable contract is the master services agreement and the agreement to send the reversing payments back to FSCLE. SAC at ¶¶ 789-790 & 804-805. Frinzi, James Goodman and Prosperity Bank were all aware of the master services agreement including specific discussions with Prosperity Bank and the history of payment into the 4352 account and the way the 4352 account was originally established. SAC at ¶¶ 794-800. James Goodman and Frinzi

23

willfully and intentionally caused the reversing transactions to stop while continuing to invoice FSCLE with no intent to have Goodman Networks perform the transactions. SAC at ¶¶ 806-808.

Frinzi and James Goodman argue that they cannot, as a matter of law, interfere with the contract between FSCLE and Goodman Networks because they were employees or agents of Goodman Networks. Employees or agents may be liable for interference with the contract of their employer/principal and a third party if the employee/agent acted "in a fashion contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). Of course, that is exactly what FSCLE pled. Frinzi and James Goodman engaged in the fraudulent invoice scheme to steal money from FSCLE not to benefit Goodman Networks but to establish a pot of money that they could then launder for their own benefit. SAC at ¶¶ 118-122, 221-222. Moreover, Frinzi and James Goodman engaged in this scheme even after employees of Goodman Networks expressed discomfort with continuing to invoice FSCLE with no reversing transactions occurring (SAC at ¶ 129-131) and after Goodman Networks was internally declared defunct. SAC at ¶¶ 138, 141-144.

Prosperity Bank interfered with the master services agreement by granting Frinzi control over the accounts even though Prosperity Bank knew there was no valid corporate resolution authorizing the change in control and when it knew of the plan to strip the assets out of Goodman Networks through the conversations between Frinzi, James Goodman and Bater Bates and then allowed the raid on the 4352 account. SAC at ¶¶ 809-815.

Had either Frinzi or James Goodman not interfered with the reversing transactions or had Prosperity Bank not interfered with control of the 4352 account, the funds would have been there to pay FSCLE. SAC at ¶¶ 816. FSCLE suffered damages in the tens of millions for these acts. SAC at ¶ 817.

24

## VI.    FSCLE Adequately Pled its Conspiracy Claim.

FSCLE pleads both a RICO conspiracy and a common law conspiracy. In order to establish a plausible claim for conspiracy, FSCLE must show: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action to be accomplished, (4) one or more overt acts in furtherance of the conspiracy, and (5) damages. *Agar Corp Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). FSCLE has met each of these elements with detailed pleading found at SAC ¶¶ 690-705. The initial group of co-conspirators included Frinzi, James Goodman, John Goodman, Jason Goodman, Jody Goodman, and Jonathan Goodman. SAC at ¶ 690. The purpose of the initial conspiracy was to strip assets out of the Goodman controlled entities including Goodman Networks prior to those companies going bankrupt. SAC at ¶ 690. The agreement for the original conspiracy is seen in the October 12-13 emails. SAC at ¶ 692. The acts taken in furtherance of the conspiracy can be found at SAC ¶¶ 693.

The initial conspiracy then grew to include Prosperity Bank, the Auerbachs, Zakharyayev, Pinkhasova and the entities controlled by them. SAC at ¶ 691. The expanded purpose of the conspiracy was the launder the stolen FSCLE funds. SAC at ¶ 691. Auerbach's agreement to join the conspiracy is pled as his communications with Frinzi in early December 2021 and his decision to move forward with the laundering transactions even though he was warned of the nature of the transactions by an independent broker. SAC at ¶¶ 694-695. Neil Auerbach's agreement to join the conspiracy can be seen in his approval of one or more of the deals through deals involving two sets of funds flows that he expressly approved. SAC at ¶ 697. Prosperity Bank's agreement can be seen in Bater Bates accepting the fraudulent Goodman Network documents giving Frinzi control of the 4352 account even through Bates knew the documents to be fraudulent. SAC at ¶ 693(d). The list of overt acts committed by each of the co-conspirators can be found at SAC ¶

699. FSCLE was damaged as a result of this conspiracy and the acts taken to further it. SAC at ¶703.

## VII. Prosperity Bank's Liability to FSCLE as Assignee of the Goodman Networks Bankruptcy Estate.

Prosperity Bank has direct liability to FSCLE through its tortious actions and acts in violation of the RICO statute. Prosperity Bank is also liable to FSCLE as the assignee of the claims that the Goodman Networks bankruptcy estate could have brought against Prosperity Bank. As part of an agreement between the bankruptcy trustee and FSCLE, the estate assigned its claims against Prosperity Bank to FSCLE. SAC at ¶ 848. Prosperity Bank does not seek to dismiss Count 8 (breach of contract against Prosperity Bank) or Count 9 (negligence against Prosperity Bank). Therefore, FSCLE will only address Count 10 (its UCC Article 4A Claim).[8]

Prosperity Bank is liable to FSCLE (as assignee of Goodman Networks) for the unauthorized wire transfers pursuant to TEX. BUS. & COM. CODE § 4A.202. Under Article 4A, where a bank executes an unauthorized wire transfer, it is liable to the customer for the loss. *Texas Brand Bank v. Luna & Luna, LP*, 2015 WL 12916411, at *2 (N.D. Tex. Feb. 27, 2015). However, if the security procedure established by the bank is commercially reasonable and the bank acted in good faith, the customer bears the loss of an unauthorized wire transfer. *Id.* The question of the

---

[8] Prosperity Bank's Motion to Dismiss is particularly disingenuous. It leads with a list of acts it claims FSCLE did not plead and implies that lack of pleading is fatal to FSCLE's claims. *See* Dkt. No. 112 at pg. 4. But the list of acts includes conduct that is simply irrelevant. For example, FedEx did not need to be an owner of a Prosperity Bank account, have direct communications with the bank or have a contract with the bank in order for the bank to have RICO, theft, unjust enrichment or fraud liability to FSCLE. More importantly, the bank's list includes acts that were actually plead such as the bank's knowledge of the business between FSCLE and Goodman (SAC at ¶ 93), the bank's "meeting of the minds" with other defendants and intent to defraud FSCLE (SAC at ¶¶ 223-255) and with the bank's knowledge that the stolen funds belonged to FSCLE (SAC at ¶¶ 7, 80 & 93).

reasonableness of Prosperity Bank's security procedure and whether Prosperity Bank failed to act in good faith, are not matters to be resolved on a motion to dismiss.

Rather, as pled in detail, Prosperity Bank knew that Goodman Networks could not validly authorize Frinzi to control the accounts. SAC at ¶¶ 90-93, 225, 232 & 241-242. Yet, Prosperity Bank knowingly accepted documents with unauthorized signatures, SAC at ¶¶108-111, and granted Frinzi unauthorized access to the 4352 account. SAC at ¶ 243. Thus, as pled, there was no security procedure or it was ignored and Prosperity Bank could not have acted in good faith.

In *Essilor International SAS v. JP Morgan Chase Bank, N.A.*, 650 F.Supp.3d 62, 78-82 (S.D.N.Y. 2023), the Southern District of New York denied a motion to dismiss on a UCC Article 4A unauthorized wire claim where JP Morgan Chase argued, as Prosperity Bank does here, that the instructions to send wire transfers came from an insider and appeared from the perspective of the bank to be authorized. The court held that the fact the wire transfer looked authorized did not make them authorized. *Id.* Further, it was no defense to UCC Article 4A that the actual security procedure was utilized to send the wire transfer if the security procedure was not otherwise commercially reasonable, and the bank did not act in good faith. *Id.*  That is exactly what FSCLE has pled in this case – that the security procedure utilized by Prosperity Bank was not commercially reasonable and Prosperity Bank could not have acted in good faith when sending the unauthorized wires because Prosperity Bank gave Frinzi control over the 4352 account knowing there was no valid authorization to do so. SAC at ¶¶ 842 & 864-866. Just as in the *Essilor* case, Prosperity Bank's motion to dismiss FSCLE's UCC Article 4A claim must be denied. The actual wire transfers sent in this case were unauthorized.

## VIII.  Goodman Networks is Not a Necessary Party.

One of the Defendants argues that Goodman Networks is a necessary party. That is not so. Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." FED. R. CIV. P.

12(b)(7); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. *HS Res.*, 327 F.3d at 438. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *Id.* The party advocating joinder has the initial burden of demonstrating that a missing party is necessary. *Hood ex rel. Ms. v. City of Memphis, Tn.*, 570 F.3d 625, 628 (5th Cir. 2009).

The Rule 12(b)(7) analysis entails two inquiries under Rule 19. *HS Res.*, 327 F.3d at 439. First, the court must determine whether a person or entity should be joined to the lawsuit. *Id.*; *see* FED. R. CIV. P. 19(a). Rule 19(a) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: 1) in that person's absence, the court cannot accord complete relief among existing parties; or 2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may either a) impair or impede the person's ability to protect the interest or b) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. FED. R. CIV. P. 19(a). If joinder is warranted, then the person or entity will be brought into the lawsuit. *HS Res.*, 327 F.3d at 439.

If such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or entity or whether to dismiss the litigation. *Id.* Factors to consider under Rule 19(b) include: 1) prejudice to an absent party or others in the lawsuit from a judgment; 2) whether the shaping of relief can lessen prejudice to absent parties; 3) whether adequate relief can be given without participation of the party; and 4) whether the plaintiff has another effective forum if the suit is dismissed. *Id.*

Here, Goodman Networks is bankrupt and cannot be joined as a party in this case absent relief from the automatic stay that will not be granted. Further, at this point, FSCLE, the bankruptcy trustee, certain bondholders and other creditors have reached an agreement, approved by the bankruptcy court, that has confirmed the proof of claim FSCLE has filed against Goodman Networks. None of the Defendants in this case have asserted any proof of claim against Goodman Networks other than a seeking relief from the stay to obtain potential indemnification and representation from the directors and officers liability policy in place. Further, there is no requirement to sue all members of a conspiracy. See *Xie Law Offices, LLC v. Nguyen & Chen, LLP*, 2018 WL 3468718, at *5 (S.D. Tex. June 28, 2018). Finally, fundamentally, it was the Defendants who perpetrated the harm in this case. Goodman Networks is not a necessary party.

## IX.     The Claims Against Judith Auerbach are Timely Filed.

Auerbach argues that FSCLE allegedly missed the two-year statute of limitation as to Judith Auerbach. Of course, Auerbach completely fails to address or acknowledge the fact that the addition of Judith Auerbach as Trustee of the Auerbach Trusts in the Second Amended Complaint relates back to the date of the original filing which is well within the two-year statute of limitation. See Fed. R. Civ. P. 15(c). Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment naming a new party relates back for purposes of the statute of limitation analysis if either state law permits the relation back or the amendment relates to the same transaction or occurrence in the original complaint, the new party is served within the period set forth in Rule 4(m), the party received notice of the original complaint, would not be prejudiced in defending on the merits and knew or should have known that they would otherwise be named but for a mistake in the identity of the proper parties. *Id.*; *Brown v. Johnson & Johnson*, 2012 WL 2134304, *5 (N.D. Tex. Apr. 19, 2012).

Here, Auerbach Partners has been a defendant since the original complaint. The Auerbach Trusts are the members/partners in that entity. However, FSCLE did not and could not have known that. The addition of the Auerbach Trusts simply clarifies the ultimate beneficiary of the stolen FSCLE funds, arises from the same transaction, and the Auerbach Trusts were on notice as of the date of the original complaint. They do not argue actual prejudice and the amendments relate back.

X. **The Court Has Personal Jurisdiction Over All Defendants.**

RICO provides nationwide service of process and personal jurisdiction "when the ends of justice require." 18 U.S.C. § 1965(b); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp. 2d 765, 781 (N.D. Tex. 2008). Even outside of a RICO analysis, most of the Defendants (certainly all of the Goodman Defendants and Prosperity Bank) reside in Texas and were connected to Goodman Networks which was located in the district. As to the Auerbach Defendants and those associated with them, they directed their activities towards Texas including the coordination of the various schemes and plans to strip the money out of companies and then to launder the stolen funds. See e.g. SAC at ¶¶ 258, 300, 305-307 & 319-320. Thus, there is personal jurisdiction over all of the Defendants whether through a RICO analysis or through a traditional personal jurisdiction analysis.

**CONCLUSION**

Through discovery in the bankruptcy case, FSCLE obtained thousands of documents which allowed it to plead in detail what happened in this case. That detailed, 185-page pleading more than satisfies the pleading standards to overcome Defendants' motions to dismiss. FSCLE has set forth a plausible RICO claim as well as the various state law causes of action in its Second Amended Complaint. FSCLE should be permitted to move forward to remedy the wrongs done to it. Alternatively, FSCLE should be granted leave to amend its complaint to address any possible pleading deficiencies that might concern the Court.

30

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:23-cv-02397 ) ) |
| JAMES E. GOODMAN, JR., *et al.*, | ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT JODY GOODMAN'S, JONATHAN GOODMAN'S AND
JOHN GOODMAN'S MOTION TO DISMISS [DKT. NO. 120]
AND INCORPORATED MEMORANDUM OF LAW**

**BUTLER SNOW LLP**

By: */s/ Daniel W. Van Horn*
DANIEL W. VAN HORN  (Pro Hac Admitted)
S. KEENAN CARTER (TX Bar No. 24006966)
R. CAMPBELL HILLYER (Pro Hac Admitted)
ADAM M. LANGLEY (Pro Hac Admitted)
KATHERINE KUCHENBECKER (Pro Hac Admitted)
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 (fax)
Danny.VanHorn@butlersnow.com
Keenan.Carter@ButlerSnow.com
Cam.Hillyer@butlersnow.com
Adam.Langley@butlersnow.com
Katherine.Kuchenbecker@butlersnow.com

**SAYLES LAW FIRM**
RICHARD A. SAYLES
Texas Bar No. 17697500
dsayles@sayleslawfirm.com

5600 W. Lovers Lane, Suite 116-363
Dallas, Texas 75209
(214) 643-8030 (Telephone)

**FEDERAL EXPRESS CORPORATION**
JASON R. BERNHARDT
Texas Bar No. 24045488
jasonbernhardt@fedex.com
3620 Hacks Cross Road, Building B
Memphis, Tennessee 38125
(901) 434-3213 (Telephone)
(901) 434-9279 (Fax)

**COUNSEL FOR PLAINTIFF FEDEX SUPPLY
CHAIN LOGISTICS & ELECTRONICS, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion has been served on all counsel of record via the Court's CM/ECF system this the 31st day of July 2024.

By: _/s/ Daniel W. Van Horn_

2

Plaintiff FedEx Supply Chain Logistics & Electronics, Inc. ("Plaintiff" or "FSCLE") for its Response in Opposition to Motion to Dismiss [Dkt. # 120] filed by Jody Goodman, Jonathan Goodman, and John Goodman states as follows:[1]

## INTRODUCTION & SUMMARY OF ARGUMENT

Defendants' Motion to Dismiss largely restates the arguments raised by the other Defendants and should be denied for the same reasons as set forth in FSCLE's Omnibus Response [Dkt. # 129]. For the sake of judicial efficiency, FSCLE does not restate its Omnibus arguments but incorporates them as if fully set forth herein. In addition, FSCLE's files this response to address the unique arguments raised by these Defendants and their roles in the schemes set forth in the Second Amended Complaint ("SAC").

As a starting point, it should be noted that this case is merely at the pleading stage. FSCLE expects its pleadings will change over time as discovery reveals additional facts that are currently unknown. But there cannot be a serious or legitimate argument that FSCLE's 185-page SAC fails to state the minimum necessary in order for FSCLE to proceed to discovery regarding each of its claims. Like the other Motions to Dismiss, this Motion to Dismiss is just a thinly veiled attempt to argue the merits of this dispute and fails because it ignores the actual (and very) detailed facts pled in the SAC. Defendants' motion is thus procedurally improper at this stage of the case as the Court

---

[1] To clarify, this Response to the Motion to Dismiss [Dkt. # 120], at this time, should only be considered as to Jody and Jonathan Goodman and not as to John Goodman. This is because of the bankruptcy automatic stay that went into effect after the Motion to Dismiss was filed, when John Goodman filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). Specifically, John Goodman commenced bankruptcy case no. 24-10806 before the Hon. Shad Robinson and that gave rise to the automatic stay under 11 U.S.C. § 362(a) *after* he filed this motion. On July 29, 2024, FSCLE filed a motion for relief from stay in the Bankruptcy Court seeking to modify the automatic stay to allow FSCLE to liquidate its claims against John Goodman in this case alongside the other named defendants. A hearing is set on that motion in the Bankruptcy Court for August 20, 2024. FSCLE respectfully requests that this Court presently accept this Response as to Jody and Jonathan Goodman, who are non-debtors, and later deem it a response as to John Goodman if the automatic stay is determined inapplicable to FSCLE's obligation to respond to the Motion to Dismiss or upon the Bankruptcy Court granting relief from the automatic stay to allow FSCLE to prosecute its claims against John Goodman in this case.

3

must accept the facts as pled by FSCLE. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *E. Poultry Distribs., Inc. v. Puez*, No. 3:00-CV-1578-M, 2001 U.S. Dist. LEXIS 27007, at *3-4 (N.D. Tex. Dec. 3, 2001) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The actual facts pled show that Defendants John Goodman, Jody Goodman and Jonathan Goodman played a significant role in schemes set forth in the SAC. John Goodman owned and controlled Goodman Networks until 2021 when he sold it to James Goodman. SAC at ¶ 19-20. During that time, he started the effort to strip assets out of Goodman Networks. *Id.* He was a beneficiary of the fraudulent stock sale using stolen FSCLE funds to purchase his worthless stock. SAC at ¶¶ 26, 374 and 379. He was part of the effort to help Jim Frinzi obtain control over the 4352 account at Prosperity Bank even though there was no valid corporate authority to do so. SAC at ¶ 91 and 101. John Goodman participated in the money laundering scheme of using stolen FSCLE funds to wash those funds through Multiband Global, AMRR, AMR Resources and ultimately One Path. SAC at ¶ 278. He exercised control over Goodman Networks in the fall of 2022 and personally profited with payment of funds that were stolen from FSCLE. SAC at ¶¶ 292-296, 299, 447, 453-470, 474-478. He also acted to frustrate the Goodman Networks' bankruptcy in an effort to hide and conceal the various misdeeds done on his behalf and on behalf of his family. SAC at ¶¶ 433 – 470.

Jody Goodman received stolen FSCLE funds under facts and circumstances where he knew the source of the funds. SAC at ¶¶ 26, 390-392. Jody Goodman was a member of the board of Goodman Networks until October 22, 2021 when he resigned and thus would have knowledge of the efforts to strip out the assets of Goodman Networks which began before his resignation. SAC

4

at ¶ 98.  Despite his resignation from the board, Jody Goodman remained informed and knowledgeable of the efforts of Frinzi and James Goodman including knowledgeable of the decision to continue to send invoices to FSCLE with no intent to perform.  SAC at ¶¶ 126-128.  In fact, on November 19, 2021, Jody Goodman sent an email within Goodman Networks saying, "we all agreed this would be for the best" referring to the effort to pull money out of the 4352 account. SAC at ¶ 135.  After resigning from the Goodman Networks board with full knowledge of the scheme to steal FSCLE's money, Jody Goodman accepted payments from Goodman Networks of stolen FSCLE funds.  SAC at ¶¶ 390-392 and 406.  Finally, without the help of Jody Goodman, John Goodman could not have seized control of Goodman Networks in the fall of 2022 and the engaged in the bankruptcy fraud scheme.  SAC at ¶¶ 435-455.

Jonathan Goodman received stolen FSCLE funds under facts and circumstances where he knew the source of the funds.  SAC at ¶¶ 26, 390-392.  He participated in the laundering of stolen FSCLE funds through Multiband Global, AMRR, AMR Resources and One Path.  SAC at ¶ 278. Jonathan Goodman helped John Goodman seize control of Goodman Networks in the fall of 2022. SAC at ¶¶ 453-455.  That effort to put John Goodman in charge of Goodman Networks was aimed at covering up the stolen FSCLE funds that had flowed to the various Goodman brothers including Jonathan.  SAC at ¶¶ 435-455 and 463.  Further, Jonathan Goodman through the MBE Group and his assistance to his brother, John Goodman, acted to defraud the Goodman Networks bankruptcy through knowingly false statements and filings.  SAC at ¶¶ 433 – 470.

Thus, John Goodman, Jody Goodman and Jonathan Goodman were active participants in the schemes at issue in this case.  While the main actors may have been James Goodman, Jim Frinzi and the Auerbachs, this group of Goodman brothers (much like Prosperity Bank) played key roles.

## LAW AND ARGUMENT

**I.** **FSCLE More Than Adequately Pled its RICO Claims – Predicate Acts of Bankruptcy Fraud 18 U.S.C. § 152.**

The RICO arguments raised by this group of Defendants are duplicative of the arguments raised by the other Defendants. FSCLE incorporates and adopts its arguments in its Omnibus Response showing that it has pled valid RICO claims. In addition to those arguments and the predicate acts shown therein, FSCLE would also show that these Defendants also committed the predicate act of bankruptcy fraud. 18 U.S.C. § 152. To state a plausible RICO predicate act of bankruptcy fraud (concealment of assets, false oaths and claims), FSCLE alleged facts showing: "(1) the Defendants engaged in a course of action with specific intent to defraud, (2) engaging in a scheme to defraud a bankruptcy proceeding, and (3) the filing of a bankruptcy petition or other related documents or a false statement or fraudulent representation during a bankruptcy proceeding to conceal or execute the scheme. *U.S. v. Chaker*, 820 F.3d 204, 210 (5th Cir. 2016); and *U.S. v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).

Here, John Goodman caused Frinzi to resign as the CEO of Goodman Networks in the summer of 2022. SAC at ¶ 442. At that point, Goodman Networks had either no director or one director, James Goodman, no CEO and could not take any valid corporate action. SAC at ¶¶ 444 and 453. Thereafter, John Goodman directed that the then resigned Frinzi sign documents on behalf of Goodman Networks that John Goodman knew could not be validly signed. SAC at ¶ 445-446. Despite the fact that Frinzi had resigned effective immediately in May 2022, John Goodman asked Frinzi to sign a resignation letter with an effective date of September 4, 2022 to paper over the documents signed in between the actual resignation and the false date of the written resignation. SAC at ¶ 447. John Goodman then had Goodman Networks execute a series of stock conversion that personally benefitted him. SAC at ¶¶ 448-452. John Goodman then caused

6

knowingly false and fraudulent bankruptcy schedules and statement of financial affairs to be filed in the Goodman Networks bankruptcy to conceal the stock conversion and the fraudulent Frinzi consent. SAC at ¶ 451.

In September 2022, James Goodman, John Goodman, Jonathan Goodman, Jason Goodman and Jody Goodman, acting as the MBE Group (one of the shareholders of Goodman Networks), worked together to establish John Goodman's control over Goodman Networks through an alleged consulting agreement. SAC at ¶¶ 454-457. The consulting agreement was fraudulent, void, and entered into to allow John Goodman, under purported color of authority, to conceal property of the estate, to falsify books, records and documents of Goodman Networks, and to frustrate FSCLE's and the other creditors' attempts to have a trustee administer the property of Goodman Networks. SAC at ¶ 458. John Goodman could not have seized control of Goodman Networks without the assistance of Jonathan Goodman and Jody Goodman. SAC at ¶ 454. Having seized control of Goodman Networks, John Goodman then caused Goodman Networks to enter into a series of transactions to personally benefit himself. SAC at ¶¶ 471-478.

On October 31, 2022, John Goodman and the Goodman MBE Group (including Jonathan Goodman and Jody Goodman) caused Goodman Networks to file in the Bankruptcy Court an Objection to FSCLE's joinder to the involuntary bankruptcy petition and made the knowingly false statement that "FSCLE is not a creditor – in any form – of Goodman." SAC at ¶ 459. John Goodman, Jonathan Goodman and Jody Goodman made this false statement with knowledge that the Goodmans and Frinzi had caused Goodman Networks to steal/defraud at least $67 million from FSCLE. SAC at ¶ 459. This group of Goodman brothers took numerous actions to hide their dealings from the bankruptcy process, the hide assets from the bankruptcy court and sought to

convert the chapter 7 bankruptcy into a chapter 11 bankruptcy to allow them to remain in control

of Goodman Networks to conceal what had happened. SAC at ¶¶ 460-470.

These facts, backed by the discovery and pleadings in the related Goodman Networks

bankruptcy, establish a prima facie case of bankruptcy fraud. The purpose of seizing control of

Goodman Networks in the fall of 2022 and then filing the false and fraudulent documents in the

bankruptcy was both to direct stolen assets to themselves and also to further hide what their family

members and other co-conspirators had done. FSCLE has set forth an additional predicate act of

bankruptcy fraud.[2]

## II. FSCLE Has Adequately Plead State Law Claims And The Economic Loss Doctrine Is No Bar to FSCLE's Claims.

These Defendants argue that the economic loss doctrine acts as a bar to FSCLE's state tort

claims citing to *Suissi v. Wells Fargo Bank Nat'l Ass'n as Tr. For Soundview Home Loan Tr. 2007-*

*OPT4, Asset-Baked Certificates, Series 2007-OPT4*, 2023 WL 2700721 at *4 (N.D. Tex. Mar. 29,

2023). These Defendants, who have no contractual privity with FSCLE, are simply incorrect that

the economic loss doctrine has any application to the claims asserted against them as indicated in

*Suissi,* which was a wrongful foreclosure case between a borrower and lender who specifically had

a contractual relationship.

The Texas Supreme Court explained how the economic loss rule works in Texas in

*Sharyland Water Supply Corp. v. City of Alton,* confirming it has rare application outside of factual

scenarios involving contractual privity between the parties to a suit. 354 S.W.3d 407, 415-19 (Tex.

2011). Originally, the economic loss rule was formulated to set perimeters in product liability

---

[2] In a few sentences, these Defendants make the conclusory assertion that the Court will lack jurisdiction if the RICO claims are dismissed. Of course, this assumes a decision that has not been made. Further, FSCLE disputes this assertion. If the Court determines that all of its RICO claims must be dismissed at this early pleading stage, FSCLE requests the opportunity to then fully brief the jurisdictional argument made by these Defendants. At this time, such briefing seems premature and unnecessary.

cases. *Id.* at 415. Over time, it was expanded to preclude tort claims where plaintiffs suffered only economic losses and had a contractual remedy against the defendant. *Id.* at 415-17. The *Sharyland* court noted that the rule has only been applied to parties not in privity in the product liability context and that "we have never held it precludes recovery completely between contractual strangers in a case not involving a defective product...". *Id.* at 418. To say, as these Defendants argue, "that the economic loss rule 'preclude[s] tort claims between parties who are not in contractual privity' and that damages are recoverable only if they are accompanied by 'actual physical injury or property damage' overlooks all of the tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage." *Id.* at 418 citing *Formosa Plastics Corp USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). In *Formosa*, the Texas Supreme Court held that claims sounding in fraud fall outside of the scope of the economic loss doctrine and do not bar the related tort claims. *Id.* at 47.

Similarly, in the context of the Texas Civil Liability Theft Act, Texas courts have consistently held that where a contract exists but there is no present intention to perform the contract, a claim under the act may be made. *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014); *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016). If the economic loss doctrine was as broad as claimed by the Defendants, the Taylor and AAB Logistics plaintiffs would have been denied recovery on the basis of the economic loss doctrine. They were not. This is because *Sharyland* confirmed "[t]he economic loss rule does not swallow all claims between contractual and commercial strangers." *Sharyland*, 354 S.W.3d at 419.

Here, FSCLE is a contractual stranger to these Defendants and its claims absolutely sound in fraud and theft. As detailed in the SAC, Defendants stole tens of millions from FSCLE by sending FSCLE more than 1,600 invoices, on and after November 3, 2021, with no intention by

the Defendants to perform the services associated with those invoices and/or the related reversing transactions in which all but a small percentage of the money paid by FSCLE would be paid back to FSCLE. SAC at ¶¶ 10, 23, 89, 118, 120, 121, 159, 160-192 & 217. This scheme continued after Goodman Networks was internally declared to be defunct with the Defendants sending another 624 invoices to FSCLE after November 23, 2021. SAC at ¶¶ 24, 138, 140, 159, 217 & 193-215.

Defendants affirmatively misled FSCLE as to why the reversing transactions (money back to FSCLE) were not happening. SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158. In response to the false narrative of the need to migrate the software platform, FSCLE even assigned IT personnel to help with the migration. SAC at ¶¶ 152-153. Employees at Goodman Networks reported being "uncomfortable" with what was happening, and the Defendants told them to continue anyway. SAC at ¶ 129-130, 141. On November 19, 2021, Defendant Jody Goodman wrote an email saying that "we all agreed this would be for the best" referring to pulling funds from the 4352 account. SAC at ¶ 135. When the alleged IT connectivity issue was resolved, FSCLE was told then (and only then) that there would be no reversing transactions. SAC at ¶¶ 154-158.

The first scheme here was to steal funds from FSCLE by sending invoices to FSCLE pursuant to the funds flow with Goodman Networks with no intent to perform the reversing transactions all to build the cash balance that could then be laundered. That is the essence of FSCLE's case. As discussed in its Omnibus Response, FSCLE has pled with particularity the elements needed to establish its Theft Liability Act, conversion, unjust enrichment, fraud and civil conspiracy claims. Under the Texas Supreme Court's holding in *Sharyland* and *Formosa*, the economic loss doctrine is no bar to these claims.

## **CONCLUSION**

10

Defendant John Goodman's, Jody Goodman's and Jonathan Goodman's Motion to Dismiss [Dkt. #120] fails for all the reasons that the other Motions to Dismiss fail. FSCLE has sufficiently pled a RICO claim and its state law claims. In addition to the other predicate acts of the other Defendants, these Defendants committed bankruptcy fraud – further showing the sufficiency of FSCLE's pleading. Finally, the economic loss doctrine does not bar FSCLE's claims. Defendants' Motion to Dismiss fails and must be denied.

88841394.v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:23-CV-02397-S |
| JAMES E. GOODMAN JR., et al., | § § § | |
| *Defendants.* | § § | |

**DEFENDANTS JODY GOODMAN AND JONATHAN GOODMAN'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Jody Goodman and Jonathan Goodman (J&J Movants) have moved to dismiss all claims of Plaintiff FedEx Supply Chain Logistics and Electronics, Inc. (FedEx) for failure to state a claim (J&J Motion) (ECF No. 120).[1] In response to other Defendants also filing motions to dismiss, FedEx filed an Omnibus Response (ECF No. 129). Now FedEx has filed a Response to the J&J Movants' Motion to Dismiss (FedEx Response to J&J Motion) (ECF No. 130). This Reply addresses arguments made in both of FedEx's responses. FedEx's Second Amended Complaint (SAC) (ECF No. 96) should be dismissed as to the J&J Movants (and as to all other Defendants) for failure to state a claim.

A.    <u>**Preliminary Ground for Dismissal of Whole Case—No Standing**</u>.

FedEx argues in its Omnibus Response that this issue of standing was resolved by the Bankruptcy Court. Of course, not being parties to the bankruptcy proceeding, nor involved in the briefing process pertaining thereto, J&J Movants are not bound by that ruling:

---

[1] Defendant John Goodman filed bankruptcy following the Motion to Dismiss and the case is presently subject to the automatic stay as against him, as Plaintiff notes in it Response. Therefore, John Goodman is not included herein.

**DEFENDANTS JODY GOODMAN AND JONATHAN GOODMAN'S REPLY**                    Page | 1
721709-v4

> A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."

*Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (citations omitted). FedEx's failure to address the

J&J Movants' argument that FedEx's claims *do* belong to the Bankruptcy Estate should result in

the SAC being dismissed on that ground, as to at least the J&J Movants. *See*:

> "Courts have consistently held that inadequate briefing results in a waiver of a party's argument." . . . Arguments may be waived where the party "fail[s] to adequately brief its arguments, and support them with facts, evidence, or applicable authority."

*Heritagemark, LLC v. Unum Life Ins. Co. of Am.*, No. 4:22-cv-04513, 2024 WL 1078301, 2024

U.S. Dist. LEXIS 45663, *21-22 (S.D. Tex. Feb. 8, 2024) (citations omitted); *accord Dewolff,*

*Boberg & Assocs. v. Pethick*, No. 3:20-CV-3649-L, 2024 WL 1396267, 2024 U.S. Dist. LEXIS

58561, *43 (N.D. Tex. Mar. 31, 2024) (Lindsay, J.) ("waived certain issues by failing to address

them in responding to Defendants' summary judgment motions"), *appeal filed*, No.24-10375 (5th

Cir. Apr. 29, 2024).

Alternatively, in its Omnibus Response, FedEx argues that the funds in the Goodman

Networks (GN) 4352 Account actually belonged to FedEx because they were obtained by fraud,

in that GN did not intend to comply with its contractual obligations when it sent invoices that led

FedEx to put funds in the account. However, that is *incorrect. See Ford v. Exxon Mobil Chem.*

*Co.*, 235 S.W.3d 615, 618 (Tex. 2007) ("Deeds obtained by fraud are *voidable* rather than void,

and *remain effective until set aside. Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976).")

(emphasis added). Therefore, FedEx did not "own" the funds in the account. Rather, FedEx has a

*fraud* claim for money damages *against GN* that FedEx can (and is) pursuing in the Bankruptcy

Court. The claim to recover the money that GN *distributed to third parties* is a *bankruptcy trustee* claim, and the J&J Movants are not bound by any contrary holding of the Bankruptcy Court:

> A **trustee** may recover property fraudulently transferred by avoiding the transfer under sections 548 and 550. According to section 550(a), **this recovered property is retained for the benefit of the <u>estate</u>**. It becomes property of the estate under section 541(a)(3) which provides that any interest the trustee recovers under section 550 becomes property of the estate.

*Sherk v. Texas Bankers Life & Loan Ins. Co. (In re Sherk)*, 918 F.2d 1170, 1176 (5th Cir. 1990) (emphasis added), *abrogated in part on other grounds, Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992); *cf. FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 133 (2d Cir. 1992) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.") (citation omitted).

FedEx does not argue or support with authority any reason why this claim to "get the money back" from transferees is FedEx's *personal* claim, given GN's bankruptcy. It was *GN's* money when a small portion of it was, allegedly, transferred to the J&J Movants. Consequently, the *Trustee* may perhaps have a claim to recover the money for the GN estate. Then some *portion* of that may be subject to distribution to FedEx based on its fraud claim against GN. J&J Movants raised this argument in their Motion to Dismiss, and FedEx failed to respond. Therefore, FedEx's claims against at least the J&J Movants should be dismissed for lack of standing.

B.  <u>**FedEx Has Not Stated Any RICO Claim Against Movants or Against Any Defendants**</u>.

If FedEx's claims *are* considered as to the separate counts, FedEx agrees that all RICO claims require "three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *D&T*

*Partners, LLC v. Baymark Partners Mgmt., LLC*, 98 F.4th 198, 205 (5th Cir. 2024) (citations omitted). Also, as pointed out by the J&J Movants in their Motion, courts are leery of transforming garden-variety state law tort claims into RICO actions.

The J&J Movants maintain *all* of the grounds raised in their motion. But now that FedEx has filed its Omnibus Response and its Response to the J&J Motion, the most *obvious* flaw in the SAC is the failure to plead an *enterprise*. A RICO plaintiff must plead an enterprise with specificity. *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002). FedEx falls far short in this regard. Specifically, FedEx *fails to identify an enterprise **separate and apart from the commission of the predicate acts***. "[A]n association-in-fact enterprise must have an existence 'that can be defined apart from the commission of the predicate acts.'" *Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, *5, 2023 U.S. App. LEXIS 13890, *12 (5th Cir. June 5, 2023) (unpublished) (citations omitted). "The 'enterprise' is not the 'pattern of racketeering activity.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (citations omitted); *see also Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (affirming summary judgment against RICO claim because "Zastrow's complaint alleges an enterprise created by the alleged racketeering activity itself") (citation omitted). Nothing in the SAC or in FedEx's Responses shows any commonality between the Defendants *other than* the transfer of monies out of the GN 4352 Account to various of them when the money (allegedly) should have been remitted to FedEx instead. This is nothing more than what is asserted to be the predicate acts. Accordingly, the RICO claims must be dismissed as to the J&J Movants (and as to all Defendants) for lack of any identifiable enterprise.

Furthermore, FedEx has failed to plead any injury to its business or property, as required by 18 U.S.C. § 1964(c). This is because the supposedly laundered money did not belong to FedEx. "[A]t the time the payment orders are accepted, title passes to the recipient of a wire transfer." *Zeal Global Servs. Private Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1317 (N.D. Ga. 2020) (citation omitted). As already noted above as to standing generally, FedEx's responsive argument that it maintained title due to fraudulent inducement is invalid. *Ford v. Exxon Mobil*, 235 S.W.3d at 618; *Nobles v. Marcus*, 533 S.W.2d at 926. Simply stated, since the owner of the 4352 Account, GN, is in bankruptcy, what FedEx has is a *fraud* claim against *GN* to pursue in Bankruptcy Court (as it is doing). The *Trustee* has the right to seek recovery of the alleged fraudulent transfers from the Debtor GN, for the benefit of the estate. The Trustee is pursuing those claims. If he is successful, he will distribute any recovery to *all* GN creditors *pro rata*. FedEx has no independent standing to assert RICO claims in that regard. Therefore, all RICO claims must be dismissed.

C.  **As All Other Claims Are Based on State Law and There is No Diversity Jurisdiction, Dismissal of the RICO Claims Calls for Dismissal of All Other Claims as Well**.

FedEx's only argument on this point is that it *does* have RICO claims, so this point is moot. However, as shown, the RICO claims against Movants (*and against the other Defendants*) must be dismissed. All other claims are based on State law, and there is no diversity jurisdiction alleged or existing. Therefore, all claims should be dismissed. *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912, *29 (N.D. Tex. Dec. 12, 2018) (Kinkeade, J.).

D.  **Additionally, All State Law Claims Should Be Dismissed on the Pleadings**.

1.  The Economic Loss Rule Argument is *Withdrawn*.

Based on the authorities FedEx advances in its Responses, J&J Movants *withdraw* the argument that all State statutory and tort claims should be dismissed under the economic loss rule.

2.    <u>Theft Liability Act</u>.

The TTLA claim must be dismissed because Movants could not have "knowingly received stolen funds" when the funds *actually belonged to GN*, not to FedEx. *See Zeal Global*, *supra* ("as a matter of law, title to the wired funds passed to the beneficiary when the funds transfer was completed") (brackets omitted; citations omitted). Whether or not FedEx has any basis to claim that *GN breached its contract to remit **money** to FedEx*, this does not render the account funds themselves *stolen* (as GN had the contractual right to receive the funds and a contractual obligation to then pay FedEx a certain percentage of the funds received).

3.    <u>Conversion</u>.

FedEx has not stated a viable conversion claim. FedEx seeks to hold these Defendants liable for "conversion" and "theft" because they knew that the source of the funds paying them came from funds originally held in GN's 4352 Account, which, in turn, came from FedEx. To establish a claim for conversion, FedEx must allege that it *owned* the money in the 4352 Account. *Rankin Constr. Nat'l Builders, L.L.C. v. Frank H. Reis, Inc.*, No. 4:17-CV-530-A, 2018 WL 1305452, *3, 2018 U.S. Dist. LEXIS 39745, *8-9 (N.D. Tex. Mar. 12, 2018) (McBryde, J.). But under FedEx's factual allegations, the money in the GN Master Services Agreement Account belonged to GN. *Zeal Global*, *supra*, 508 F. Supp. 3d at 1317; *see also Encinas v. Jackson*, 553 S.W.3d 723, 727 (Tex. App.—El Paso 2018, no pet.) (holding that money "is subject to conversion only when it can be identified as a specific chattel" and that no conversion occurs "where an indebtedness may be discharged generally by the payment of money") (citations omitted).

4.    <u>Unjust Enrichment</u>.

"A plaintiff may recover for unjust enrichment if the defendant has obtained a benefit *from [him]* by fraud, duress, or the taking of an undue advantage." *Scott v. Wollney*, No. 3:20-CV-2825-

M-BH, 2021 WL 4851852, *4, 2021 U.S. Dist. LEXIS 200882, *13 (N.D. Tex. Sept. 10, 2021) (Ramirez, M.J.) (emphasis added; citation omitted), *adopted sub nom. Scott v. Atlas Financial Holdings, Inc.*, 2021 WL 4845779, 2021 U.S. Dist. LEXIS 199858 (Oct. 18, 2021) (Lynn, C.J.), *affirmed sub nom. Scott v. Wollney*, No. 21-11161, 2022 WL 4009050, 2022 U.S. App. LEXIS 24860 (5th Cir. Sept. 2, 2022) (unpublished). FedEx's pleading shows the alleged benefit was not *from FedEx*, but rather *from GN*, since the funds belonged to GN once wired into GN's account. *Zeal Global*, 508 F. Supp. 3d at 1317.

Second, there was no "fraud, duress, or taking of undue advantage" of FedEx by the J&J Movants, who are not alleged to have made any representations to FedEx.

Moreover, "[a] claim for unjust enrichment is unavailable as there is a contract governing this dispute. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) ('The written contracts in this case foreclose any claims for unjust enrichment.')." *Blackhawk Paving, Inc. v. CPCM, LLC*, No. 4:20-CV-00048, 2021 WL 1521985, 2021 U.S. Dist. LEXIS 59546, *20-21 (E.D. Tex. Feb. 26, 2021), *adopted in part and overruled in part*, 2021 WL 1152836, 2021 U.S. Dist. LEXIS 57785 (Mar. 26, 2021); *see also Lake v. Cravens*, 488 S.W.3d 867, 907 (Tex. App.— Fort Worth 2015, no pet.) (same). "This rule [regarding unjust enrichment] is applicable not only when the plaintiff is seeking to recover in equity from the party with whom it expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance." *Blackhawk*, 2021 U.S. Dist. LEXIS 59546, *21 (citations omitted). "A party cannot recover on such a theory where the subject matter is covered by an express contract, even where the parties to the lawsuit are not in privity." *Ambulatory Servs. of P.R., LLC v. Sankar Nephrology Grp., LLC*, No. 4:18-CV-916-A, 2019 WL 4192738, *9, 2019 U.S. Dist. LEXIS 150273 (N.D. Tex. Sept. 3, 2019) (McBryde, J.). Though

FedEx may have a claim *against GN* for fraudulent inducement, that ostensible right should not

defeat the monies being *transferred by contract* as far as liability of *J&J Movants* under unjust

enrichment under the foregoing law (apparently an *issue of first impression*).

     5.    <u>Common Law Fraud</u>.

    Generally, to state a fraud claim under Texas state law, a plaintiff must allege that:

> (1) the defendant "made a material representation that was false"; (2) the defendant
> "knew the representation was false or made it recklessly as a positive assertion
> without any knowledge of its truth"; (3) the defendant intended to induce the
> plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably
> relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)

(citations omitted). "When a plaintiff alleges claims sounding in fraud, they must be pleaded with

particularity in accordance with Federal Rule of Civil Procedure 9(b)." *Energium Health v. Gabali*,

No. 3:21-CV-2951-S, 2023 WL 6392631, *3, 2023 U.S. Dist. LEXIS 175693, *7 (N.D. Tex. Sept.

29, 2023) (Scholer, J.) (citation omitted). "In other words, a plaintiff must provide the 'who, what,

when, where, and how' of the alleged fraud." *Id*. FedEx has not alleged that any J&J Movant made

any representations *to FedEx*, much less any representations that were material or false, much less

relied upon by FedEx, much less with the specificity required by Rule 9(b). As a result, the Court

should dismiss FedEx's common law fraud claims against Jody and Jonathan.

     6.    <u>Civil Conspiracy</u>.

    Finally, FedEx seeks to hold all Defendants liable for "civil conspiracy," which FedEx

describes as "one to steal funds from [FedEx] and the [sic] launder them." SAC ¶ 822. First, FedEx

uses a "shotgun" pleading approach and invokes the RICO conspiracy claims to support its

common-law conspiracy claim. *See* SAC ¶¶ 819-823.[2] There are *no* specific facts alleged in Cause No. 7 related to common law conspiracy. This claim consists of less than a page, SAC at 154-155. It is merely a "shotgun" invocation of all prior allegations in the previous *154 pages*. This alone requires dismissal. *Moore v. Carrington Mortg. Servs., LLC*, No. 3:17-cv-3132-G-BN, 2018 WL 3853711, 2018 U.S. Dist. LEXIS 136288, *8-9 (N.D. Tex. July 17, 2018) (Horan, M.J.), *adopted*, 2018 WL 3850635, 2018 U.S. Dist. LEXIS 136075 (Aug. 13, 2018) (Fish, J.). FedEx makes no response to this point except to say it has alleged plenty of other allegations *elsewhere* in the Complaint. However, that is the very thing the shotgun pleading bar was intended to address— making a lot of allegations elsewhere in the pleading and then incorporating them *in toto* into a specific count with no further elucidation. This is prohibited.

Second, these allegations do not comply with Rule 9(b) insofar as they are based on fraud by the J&J Movants. *See Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litigation)*, 623 F. Supp. 2d 798, 811, n.11 (S.D. Tex. 2009). As to the J&J Movants, FedEx makes (*elsewhere* in the SAC) the following allegations only: (a) the J&J Movants received certain funds knowing they came from the GN 4352 Account, and (b) they "facilitated" John Goodman's being selected to handle GN's bankruptcy, and *thereafter* John Goodman allegedly committed bankruptcy fraud. Neither of these two conclusory allegations, even if they could be considered in the shotgun count, alleges the "who, what, when, where, and how" of J&J's alleged participation in a conspiracy to defraud FedEx.

---

[2] "Complaints of this type set forth an excessive number [of] facts before alleging that all the provided facts support various counts in the complaint, with the result that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, 2018 U.S. Dist. LEXIS 209912, *8-9 (N.D. Tex. Dec. 12, 2018) (Kinkeade, J.) (citation and internal quotation marks omitted).

Third, for a civil conspiracy claim, the "defendant's liability is derivative of an underlying tort; without independent tortious conduct, there is no actionable civil conspiracy claim." *Baker v. Great Northern Energy, Inc.*, 64 F. Supp. 3d 965, 980 (N.D. Tex. 2014) (citations omitted). Since the Court should dismiss each of the SAC's tort claims, the derivative conspiracy claim must be dismissed as well. *Id.*; *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013).

Fourth, to have a conspiracy, "[t]here must be an agreement or understanding between the conspirators to inflict a wrong against, or injury on, another, a meeting of the minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." *Newby*, 623 F. Supp. 2d at 809 (citation omitted). The conspiracy claim simply fails to allege this, at least as against J&J Movants, and should be dismissed, at least as to them.

**WHEREFORE**, the SAC should be dismissed as to Movants Joseph "Jody" Goodman and Jonathan Goodman. Given that this is already the *Second* Amended Complaint (third bite at the apple), this dismissal should be *with prejudice. See May v. City of Arlington*, 398 F. Supp. 3d 68, 89 (N.D. Tex. 2019) (Lindsay, J.) ("three bites at the apple").

Respectfully submitted,

/s/ David A. Skeels
David A. Skeels
Texas Bar No. 24041925
dskeels@whitakerchalk.com
Lead Counsel in Charge

Robert A. Simon
Texas Bar No. 18390000
rsimon@whitakerchalk.com

Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
FAX:  (817) 878-0501

**ATTORNEYS FOR DEFENDANTS
JODY GOODMAN AND JONATHAN GOODMAN**

## CERTIFICATE OF SERVICE

I hereby certify that I e-filed this document using the Court's ECF protocol on August 8th, 2024, and thereby e-served all counsel of record who have appeared.

/s/ David A. Skeels
David A. Skeels

Label Matrix for local noticing
0542-1
Case 24-10806-smr
Western District of Texas
Austin
Fri Aug  9 16:25:12 CDT 2024

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

18920 NW 11th LLC
c/o Joseph W. Golinkin, II
1980 Post Oak #2300
Houston, TX 77056-3841

AMR Resources, LLC
110 Allgood Indus. Ct.
Marietta, GA  30066

Alicia Lackey/Cayenne Goodman
150 E. Main St., Suite 216
Fredericksburg, TX 78624-4202

Alliance Texas Holdings, LLC
c/o Michael A.Cancienne
1980 Post Oak #2300
Houston, TX 77056-3841

Amarillo National Bank
c/o Clint R. Latham
P. O. Box 1
Amarillo, TX 79105-0001

AmeriCredit Financial Services, Inc. dba GM
P O Box 183853
Arlington, TX 76096-3853

Auerbach Family Dynasty Trust
50 Lawrence St.
Lawrence, NY 11559-1436

Auerbach Partners, LP
c/o Michael A. Cancienne
1980 Post Oak #2300
Houston, TX 77056-3841

Bank of America
P. O. Box 17237
Wilmington, DE 19886-0001

Bank of America, N.A.
PO BOX 31785
Tampa, FL 33631-3785

Cadillac Financial
P. O. Box 78141
Phoenix, AZ 85062-8141

Capital One Auto Finance
P. O Box 259407
Plano, TX 75025-9407

Capital One Auto Finance, a division of
AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Carrington Coleman
901 Main St. #5500
Dallas, TX 75202-3767

Cayenne Goodman
123 Feather Way
Fredericskburg, TX 78624-2631

Christopher Murray, Trustee
DeBauche OSP Comm., LLC
602 Sawyer St. #400
Houston, TX 77007-7510

Citibank
P O Box 6217
Sioux Falls, SD 57117-6217

Citicards
P O Box 6500
Sioux Falls, SD 57117-6500

Clint R. Latham
PO Box 1
Amarillo, TX 79105-0001

Credit One Bank
P O Box 98872
Las Vegas, NV 89193-8872

DeBauche OSP Communications, LLC
P. O. Box 2371
Fredericksburg, TX 78624-1921

Dist Clerk  #DC 23-16418
600 Commerce St. Suite 103
Dallas, TX 75202-6604

Dist Clerk #23-09-14382
P. O. Box 2985
Conroe, TX 77305-2985

Dist. Clerk #111762 BCV
501 S. Fillmore St.
Amarillo, TX 79101-2433

Evalina Pinkasova
c/o Joseph W. Golinkin, II
1980 Post Oak Blvd. #2300
Houston, TX 77056-3841

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

FedEx Supply Chain Logistics &
Electronics, Inc./Adam Langley
P. O. Box 171443
Memphis, TX 38187-1443

Fedex Supply Chain Logistics & Electronics,
c/o Adam M. Langley
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119-0102

Fedex Supply Chain Logistics & Electronics,
c/o R. Campbell Hillyer
Butler Snow LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119-0102

Freedom Mortgage
951W. Tamato Rd., #175
Boca Raton, FL 33431-4444

Frinzi Family Trust
c/o Paul Thomas Elkins
100 Throckmorton St.#1500
Ft. Worth, TX 76102-2845

GNET ATC, LLC
2801 Network Blvd #300
Frisco, TX 75034-1881

Genesis Networks Telecom Svc.LLC
c/o Laurie Rea, Trustee
300 Throckmorton St. #520
Ft. Worth, TX 76102-2929

Genesis Networks Telecom Svcs
c/o Laurie Rea, Trustee
300 Throckmorton St. #520
Ft. Worth, TX 76102-2929

Goodman Investment Holdings, LLC
1354 N Loop 1604 # #103
San Antonio, TX 78232-1342

Goodman Networks, Inc.
c/o Davor Rukavina
500 N.Akard #3800
Dallas, TX 75201-6659

Goodman Networks, Inc.
c/o Scott Seidel, Trustee
6505 W. Park Blvd. #306
Plano, TX 75093-6212

Gordon Green/Woodforest NatBk
1717 N. Main St. #3000
Dallas, TX 75201-4335

Greater Tech Holdings, Inc.
c/o Janet Casciato-Nortrup
1201 Louisiana #2800
Houston, TX 77002-5607

Greater Tech Holdings, Inc..
P. O. Box 2371
Fredericksburg, TX 78624-1921

HSB Holdings,LLC
c/o Paul T. Elkins
100 Throckmorton St. #1500
Ft. Worth, TX 76102-2845

Haynes & Boone
2801 N. Harwood St. #2300
Dallas, TX 75201-2754

Hudson Clean Energy Ent. LLC
c/o Michael Cancienne
1980 Post Oak #2300
Houston, TX 77056-3841

(p) INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Internal Revenue Service
Special Procedures Insolv.Sec.
P.O. Box 7346
Philadelphia, PA 19101-7346

JPMCB Card Services
P O Box 15353
Wilmington, DE  19850

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Jake Goodman
c/o Anna K. MacFarlane
2161 NW Military Hwy #400
San Antonio, TX 78213-1844

James Frinzi
c/o Paul T. Elkins
100 Throckmorton St. #1500
Ft. Worth, TX 76102-2845

James Goodman, Jr.
c/o Anna K McFarlane
2161 NW Military Hwy #400
San Antonio, TX 78213-1844

James Roeder, Indiv. & as Trustee
EquityTrstCo./J.O.RoederRoth IRA
c/o C. Dixon Mosty
222 Sidney Baker South #400
Kerrville, TX 78028-5983

Janet Casciato-Northrup, Trustee
Greater Tech Holdings, Inc.
1201 Louisiana #2800
Houston, TX 77002-5607

Jonathan Goodman
c/o Anna K. MacFarlane
2161NW Military Hwy #400
San Antonio, TX  78213

Judith Auerbach
50 Lawrence Ave.
Lawrence, NY 11559-1436

Laurie Dahl Rea
c/o Kevin McCullough
Rochelle McCullough, LLP
901 Main St #3200
Dallas TX 75202-3707

MBG Holdings, Inc.
4301 Westbank Dr. B 100
Austin, TX 78746-6564

Mark Castillo
901 Main St. #5500
Dallas, TX 75202-3767

Mark Petrocchi
2200 Forest Park Blvd.
Ft. Worth, TX 76110-1732

Micah McKinney, Trustee
Michah McKinney Trust
c/o C. Dixon Mosty
222 Sidney Baker South #400
Kerrville, TX 78028-5983

Neil Auerbach
c/o Michael Cancienne
1980 Post Oak #2300
Houston, TX 77056-3841

Prosperity Bank
c/o Lisa C. Fancher
Fritz Byrne, PLLC
402 West Seventh St.
Austin, TX 78701-2808

Prosperty Bancshares,Inc.
4295 San Felipe
Houston, TX 77027-2942

Prosperty Bank
1301 N. Mechanic St.
El Campo, TX 77437-2633

Randy Bennett
421 Compton Ave.
Irving, TX 75061-6210

S. Dylan Pearcy
503 Ave. A #1119
San Antonio, TX 78215-1272

SDIA Courier Services, Inc.
1865 West 222nd St. #B
Torrance, CA 90501-3622

Scott M Seidel, Ch 7 Trustee for
Goodman Networks Inc
c/o Conor White/Munsch Hardt
500 N Akard St #4000
Dallas TX 75201-6605

Scott M Seidel, Trustee for Goodman Networks
c/o Munsch Hardt Kopf & Harr PC
500 N Akard St #4000
Dallas TX 75201-6605

Shalom Auerbach
c/o Michael Cancienne
1980 Post Oak #2300
Houston, TX 77056-3841

Steven Zakharyayev
c/o Joseph W. Golinkin, II
1980 Post Oak Blvd. #2300
Houston, TX 77056-3841

The Auerbach Children's Dynasty
Trust
50 Lawrence St.
Lawrence, NY 11559-1436

(p)U S  BANK
4801 FREDERICA STREET
OWENSBORO KY 42301-7441

Unified Field Services, Inc.
c/o Anna K. MacFarlane
2161 N.W. Military Hwy #400
San Antonio, TX 78213-1844

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

Vista Bank
c/o James H. Billingsley
100 Crescent Court, Suite 1200
Dallas, Tx 75201-7860

Vista Bank
c/o Murray Bristol
10440 N.CentralExpressway #800
Dallas, TX 75231-2264

Whitaker Chalk Swindle &Schwartz
301 Commerce St. #3500
Ft. Worth, TX 76102-4135

Woodforest National Bank
P. O. Box 7889
The Woodlands, TX 77387-7889

John Andrew Goodman
1008 Middle Creek Road
Fredericksburg, TX 78624-7009

John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801-4943

Martin Seidler
Law Offices of Martin Seidler
11107 Wurzbach, Suite 504
One Elm Place
San Antonio, TX 78230

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

FIA/Bank of America
Bankruptcy Dept. NC4-105-03-14
4161 Piedmont Parkway
Greensboro, NC 27410

Internal Revenue Service
Attn: Special Procedures Group
300 E. 8th St., STOP 5022 AUS
Austin, TX 78701

JPMCB Card Services
P O Box 15369
Wilmington, DE  19850

US Bank Home Mortgage
2800 Tamarack Rd.
Owensboro, KY  42301

| End of Label Matrix | |
|---|---|
| Mailable recipients | 83 |
| Bypassed recipients | 0 |
| Total | 83 |