UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 24-10806-smr |
| JOHN ANDREW GOODMAN, | § | |
| | § | Chapter 7 |
| Debtor. | § | |

**MOTION FOR ENTRY OF AN ORDER EITHER (1) APPROVING SALE OF ASSETS AND FOR APPROVAL OF LITIGATION SHARING ARRANGEMENT AND RELATED RELIEF, OR IN THE ALTERNATIVE, (2) APPROVING COMPROMISE PURSUANT TO RULE 9019 AND FOR RELATED RELIEF**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held. Any response must be timely filed with the United States Bankruptcy Clerk, Western District of Texas, Austin Division, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., Suite 322, Austin, TX 78701. If a timely response is filed, the Court will then set a hearing on the Application, and you will be provided with notice of the date, and place of the hearing. If you do not attend the hearing, the Court may decide that you do not oppose the Application.**

TO THE HONORABLE SHAD M. ROBINSON, U.S. BANKRUPTCY JUDGE:

COMES NOW John Patrick Lowe, Trustee ("Trustee"), the duly appointed and acting Chapter 7 trustee in the above-captioned bankruptcy case (the "Bankruptcy Case") filed by John Andrew Goodman ("Debtor"), and hereby files his motion ("Motion") for entry of an order either approving a litigation arrangement with Debtor's primary creditor and retention of special litigation counsel, or in the alternative approving a compromise with Debtor and several trusts controlled by Debtor.[1] In support of the Motion, the Trustee respectfully represents as follows:

I. SUMMARY

1. The bankruptcy estate (the "Estate") holds potential litigation claims, including

---

[1] Either request involves up-to substantially all non-exempt assets of the Estate.

3586174.v1

chapter 5 causes of action and other litigation related claims against Debtor and various persons (the "Estate Causes of Action") that are affiliated with Debtor. By this Motion, the Trustee seeks authority to either 1) enter into an arrangement whereby Debtor's primary creditor will pay the Estate $20,000.00 for the right to control, manage, prosecute, not prosecute, and/or settle all Estate Causes of Action with the Estate retaining ownership of the Estate Causes of Action and an interest in the proceeds from such litigation through a sharing arrangement, or in the alternative 2) to settle the Estate Causes of Action with Debtor and certain trusts controlled by Debtor. The Trustee intends to request that the Court set a hearing on this Motion in order to allow final bids to be submitted by the parties-in-interest. All parties-in-interest should treat this Motion as requesting disposition of up-to substantially all non-exempt assets of the Estate.

## II. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 157 and 1334. It is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A) and (B). Venue is proper in this District, Division and before this Court. The Motion itself is grounded in 11 U.S.C. §§ 105, 328, 330, 363(f), 364, and 507, and Fed. R. Bankr. P. 9019.

## III. RELEVANT BACKGROUND FACTS

2. On July 10, 2024 (the "Petition Date"), this case was filed under Chapter 7 of title 11 of the United States Code.

3. Trustee is the duly appointed and serving chapter 7 trustee administering the Estate in the Bankruptcy Case.

4. The Trustee has on hand a limited amount of cash, in an amount insufficient to fund ongoing litigation in which the Estate is involved.

5. Creditor FedEx Supply Chain Logistics & Electronics, Inc. ("FSCLE") has asserted the largest claim against the Estate. Among other things, that claim relates to allegations that

Debtor, in conjunction with his brothers, participated in and benefited from the misappropriation of tens of millions of dollars belonging to FSCLE. As a result of those allegations, the Trustee believes that FSCLE has at least colorable claims that Debtor funded assets to which FSCLE would have direct claims against some of the same persons against which the Trustee intends to assert claims on behalf of the Estate.

6. Included in the Estate are certain causes of action (the "Estate Causes of Action") belonging to the Debtor, including those which the Trustee has asserted in Adv. Proc. 24-01056-smr (the "Adversary Proceeding"). Among those are various causes of action relating to pre-Petition Date transfers of over one million dollars made to or for the benefit of Debtor and several trusts controlled by Debtor, as well as various business interests owned by Debtor.

7. The Trustee has made efforts to reach a global settlement with FSCLE and Debtor relating to the Estate Causes of Action. Unfortunately, a global settlement has proved to be out of reach.

8. Based on Debtor's actions and omissions since the Petition Date, the Trustee does not consider the Debtor to be a particularly reliable source of information regarding Debtor's own financial affairs. The Trustee has also concluded that the allegations made against Debtor by FSCLE are likely meritorious. Nevertheless, the Trustee recognizes that his obligations center around administering what can be known of the Estate by monetizing it.

9. Concurrently with attempting to negotiate a settlement with Debtor relating to the Estate Causes of Action, the Trustee approached FSCLE to attempt negotiate a potential mutually beneficial approach relating to the Estate Causes of Action.

10. The result of those negotiations are a proposal from FSCLE and a separate proposal from Debtor.

3586174.v1

### *The FSCLE Proposal*

11. The proposal from FSCLE is an agreement (the "FSCLE Agreement"). A true and correct copy of a version of the FSCLE Agreement is attached hereto as **Exhibit 1**, which is incorporated herein for all purposes. The Trustee summarizes the Agreement as follows:

   a. FSCLE would pay the Estate $20,000.00 to purchase the right to prosecute the Estate Causes of Action;

   b. FSCLE would pay for investigation and the prosecution of such of the Estate Causes of Action as FSCLE deems merit investigation and prosecution;

   c. FSCLE and the Trustee would enter into a joint prosecution agreement (the "JPA") that specifies, among other things, the terms of control over the Estate Causes of Action and requires and settlement of any of the Estate Causes of Action to be approved by this Court in accordance with Bankruptcy Rule 9019;

   d. Special litigation counsel ("Special Litigation Counsel") would be retained in the name of the Estate for the purpose of pursuing the Estate Causes of Action;

   e. FSCLE would retain such independent causes of action as it may possess;

   f. From any recoveries on the Estate Causes of Action, the following sharing arrangement would govern:

      i. Up to reimbursement of FSCLE's expenses pursuing the Estate Causes of Action: 100% FSCLE (the "Preferred Recovery");

      ii. After the Preferred Recovery until all the Trustee's statutory commission and the Trustee's expenses are paid in full plus all other Chapter 7 administrative priority fees and expenses are paid in full;

      iii. After payment according to the foregoing paragraph: 70% FSCLE, 30%

Estate.

12. The FSCLE Agreement would bring a modest sum of cash into the Estate immediately, which can potentially be available for distribution to creditors in the event that the pursuit of the Estate Causes of Action is unsuccessful. The potential recovery on the Estate Causes of Action exceeds $2,000,000.00, and could potentially be more in the event that previously undisclosed assets are unearthed.

### *The Debtor Agreement*

13. The Debtor asserts that he has provided the Trustee with all books and records in his possession or control that the Trustee has requested (the "Financial Records").

14. Debtor's bankruptcy schedules and statements of financial affairs (as amended from time to time, the "Schedules") disclose the existence of certain trusts (the "Trusts") controlled by Debtor. Transfers to the Trusts form the factual basis for the Adversary Proceeding.

15. The Schedules also disclose ownership by Debtor of certain business interests, including a 20% interest in a limited partnership on which Debtor placed a substantial valuation.

16. After extensive negotiations, the proposal from Debtor is also an agreement (the "Debtor Agreement"). A true and correct copy of a version of the Debtor Agreement is attached hereto as **Exhibit 2**, which is incorporated herein for all purposes. The Debtor Agreement can be summarized as follows:

   a. Two payments totaling $1,000,000.00.

   b. Transfer to Debtor and/or the Trusts of substantially all non-exempt assets of the Estate.

   c. Transfer to Debtor of all tax carryforwards and/or carrybacks including all claims against the IRS for tax refunds and the right to dispute any IRS tax liabilities and

5

3586174.v1

related tax beneficial losses, including the right to object to any proof of claim filed by the IRS (the "Tax Rights").

17. The Trustee has concerns about the transferability of the Tax Rights and regardless believes on advice of his accountant that they should not be transferred until all potential tax liabilities of the Estate are resolved.

18. As part of the Debtor Agreement, the parties thereto would exchange mutual releases.

### IV. ARGUMENT AND BASIS FOR RELIEF

19. Section 363 of the Bankruptcy Code authorizes sales of property of bankruptcy estates free and clear of all claims. 11 U.S.C. § 363(f). Section 364 of the Bankruptcy Code authorizes the Trustee to seek approval from this Court for obtaining credit or to incur debt in a manner that connects the credit and/or debt to a specific source of recovery. 11 U.S.C. § 364(c)(2) (authorizing the approval of obtaining credit or incurring debt secured by lien on property of the estate that is not otherwise subject to a lien). Section 327, 328, and 330 relate to the retention of counsel for bankruptcy estates. Rule 9019 of the Bankruptcy Rules authorizes bankruptcy courts to approve compromises of matters relating to bankruptcy estates.

2. Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. In approving compromises, courts rely on debtor's authority to dispose of estate property under section 363(b) of the Bankruptcy Code. *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 895 (Bankr. S.D. Tex. 1995). "Approval should only be given if the [compromise] is fair and equitable and in the best interest of the estate." *In re Cajun Electric Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted).

3. In deciding whether a compromise is "fair and equitable," the Court must ensure

that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *Cajun Electric*, 119 F.3d at 355; *Matter of Jackson Brewing Co.*, 624 F.2d 599, 600 (5th Cir. 1980). The factors to be reviewed by the Court in determining whether or not to approve a compromise are:

> (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law;
>
> (b) the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay; and
>
> (c) all other factors bearing on the wisdom of the compromise.

*Cajun Electric*, 119 F.3d at 356. The Court should also consider the best interest of the creditors, with proper deference to their reasonable views, and the extent to which the compromise is truly the product of arms-length bargaining. *In re Foster Mortgage Corp.*, 68 F.3d 914, 917-18 (5th Cir. 1996).

4. It is unnecessary for the Court to conduct a mini-trial before approving a compromise. *Cajun Electric.*, 119 F.3d at 356. The Court need only make itself aware of relevant facts and law so that it may make an informed and intelligent decision. *Id*. "The [compromise] need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd sub nom. In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011).

20. The FSCLE Agreement and the Debtor Agreement represent two related but generally dissimilar approaches to administering the assets of this Estate.

21. Under the FSCLE Agreement, FSCLE would purchase rights in the Estate Causes of Action and pursue them for the benefit of itself and the Estate under the sharing arrangement. The Trustee submits that no creditor has a valid, perfected security interest or lien against the Estate Causes of Action. Accordingly, the Trustee would be entitled to transfer some or all of the

Estate's interest in the Estate Causes of Action free and clear pursuant to section 363(f). Likewise, the Trustee's decision to permit FSCLE to fund pursuit of the Causes of Action would be warranted and meets the standards applicable to 363(c)(2).

22. Under the FSCLE Agreement, the Trustee would propose that FSCLE be entitled to treatment under 11 U.S.C. § 507(a)(1)(C) for claim to reimbursement of reasonable and necessary fees and expenses actually paid by FSCLE to Special Litigation Counsel with respect to the Causes of Action. FSCLE would have exclusive responsibility for any fees and expenses incurred by Special Litigation Counsel in pursuing the Estate Causes of Action and would have exclusive responsibility for ensuring that Special Litigation Counsel adequately segregates its fees and expenses.

23. The Debtor Agreement, on the other hand, would conclude ongoing litigation for the Estate. It would involve a larger amount of non-contingent recovery for the Estate, but would not bring with it the potential upside recovery that the FSCLE Agreement would.

24. The Trustee has considered various options available to him with respect to pursuing the Estate Causes of Action. It is his business judgment that either the FSCLE Agreement or the Debtor Agreement would represent a better result for the Estate than were the Trustee to independently pursue the Estate Causes of Action. Furthermore, the FSCLE Agreement and the Debtor Agreement would represent the safest options available to the Estate, one in which the Estate would receive additional funds and not have to incur ongoing costs to pursue the Estate Causes of Action. The primary difference between the two proposals is that the Debtor Agreement would bring in more cash promptly but have no further monetary upside value for the Estate; the FSCLE Agreement would bring in a smaller amount of cash promptly but carry with it substantial potential upside for the Estate.

25. If the Tax Rights provision of the Debtor Agreement were removed, the Trustee's business judgment would be that the Debtor Agreement would be the superior offer. As things presently stand, the Trustee believes that the FSCLE Agreement is the superior offer.

26. The negotiations between the Trustee and FSCLE and between the Trustee and Debtor have been arm's length. The Trustee believes that either the FSCLE Agreement or the Debtor Agreement would be fair and equitable and in the best interests of the Estate. Both would independently meet the relevant factors for approval of sales under section 363 and compromises under Rule 9019.

27. The Trustee intends to request that this Motion be set for hearing (the "Hearing") in order to hold an auction of the Estate Causes of Auction under the FSCLE Agreement and the Debtor Agreement. Included in this process will be the ability of FSCLE and Debtor to present revised terms to their respective agreements. The Trustee anticipates presenting final versions of the respective agreements at the Hearing.

28. If the FSCLE Agreement prevails, in conjunction with that the Trustee would request approval by the Court of retention of Butler Snow, LLP as special litigation counsel. Attached hereto as **Exhibit 3** is draft Disclosure of Compensation. Attached hereto as **Exhibit 4** is a draft Declaration of Adam M. Langley. The Trustee anticipates that final, executed versions will be presented at the Hearing.

**WHEREFORE**, the Trustee respectfully requests that, after a hearing and auction, the Court (i) grant the relief sought herein, and (ii) granting such other relief as the Court may deem proper.

[signature block on following page]

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: 512.480.5626
Facsimile: 512.536.9926
bcumings@gdhm.com

By:/s/ *Brian T. Cumings*
  Brian T. Cumings
  SBN 24082882
  Fed ID No. 2069558
**COUNSEL FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served by the Court's ECF e-filing notification on all parties receiving such notices on June 5, 2025, and via US First Class Mail as reflected below. The Motion (sans exhibits) and the Notice of Motion appended hereto are being served to those on the Service List appended herewith.

| | |
|---|---|
| Office of the United States Trustee<br>903 San Jacinto Blvd., Room 230<br>Austin, TX 78701 | John Patrick Lowe, Chapter 7 Trustee<br>2402 East Main Street<br>Uvalde, TX 78801 |
| John Andrew Goodman<br>1008 Middle Creek Road<br>Fredericksburg, TX 78624<br>*Debtor* | Martin Seidler<br>Law Offices of Martin Seidler<br>11107 Wurzbach, Suite 504<br>One Elm Place<br>San Antonio, TX 78230<br>*Debtors' Counsel* |

By:/s/ *Brian T. Cumings*
  Brian T. Cumings

10

3586174.v1